COURT OF APPEALS OF VIRGINIA


Present:   Judges McClanahan, Beales and Senior Judge Willis
Argued at Salem, Virginia


STEPHEN JAMES SWANSON
                                                          OPINION BY
v.        Record No. 0163-09-3              JUDGE RANDOLPH A. BEALES
                                                          APRIL 27, 2010
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF AMHERST COUNTY
James W. Updike, Jr., Judge[1]

B. Leigh Drewry, Jr. (Cunningham & Drewry, on brief), for
appellant.

Kathleen B. Martin, Senior Assistant Attorney General (William C.
Mims, Attorney General, on brief), for appellee.


        The trial court convicted Stephen James Swanson (appellant) of forging a certificate of

title, in violation of Code § 46.2-605; uttering a forged certificate of title, in violation of Code

§ 18.2-178; and obtaining by false pretenses currency valued at $200 or more, in violation of

Code §§ 18.2-95 and 18.2-178.  Appellant on appeal argues that the trial court committed

reversible error when it sustained the Commonwealth's hearsay objection to a question posed by

his defense counsel during his cross-examination of a witness.  Appellant contends that the trial

court should have permitted defense counsel to ask the witness this question because it included

what appellant claims was "the entire statement" he made to the witness.  Appellant also asserts

that, contrary to the trial court's ruling, this statement did not contain hearsay because the

---

        [1] Judge J. Michael Gamble, who presided at appellant's trial, recused himself from the
case prior to sentencing.  Judge Updike presided at sentencing.  Appellant has not raised in his
petition for appeal to this Court any issue related to Judge Gamble's recusal.

statement reflected his state of mind and was not offered for the truth of the matter asserted.  For the following reasons, we affirm.

## I. BACKGROUND

Jennifer Hatter purchased a 1973 Jeep for $1,505 in June 2007, not long after entering a romantic relationship with appellant, who began working for her construction business in the fall of 2006.  Although appellant maintained and insured the Jeep, Hatter testified that she did not intend to give the Jeep to him as a gift, even though appellant contended otherwise.  Hatter claimed that appellant was supposed to pay her the full purchase price for the Jeep, which was titled in the names "SWANSON, STEVEN JAMES, AND HATTER, JENNIFER LYNN, OR SURV."

The relationship between appellant and Hatter ended on February 19, 2008,[2] and appellant began residing at a campground owned by Terry Farmer, to whom appellant amassed a $400 debt.  On March 8, 2008, Farmer agreed to buy the Jeep, which was still in appellant's possession, for $1,000 – thereby relieving appellant's $400 debt and providing him with an additional $600.  Appellant gave Farmer the title to the Jeep, which listed appellant and Hatter as the sellers.  The title appeared to be signed by both appellant and Hatter.  Appellant assured Farmer that he "had a good title" to the Jeep.

However, Hatter had never signed the title as a seller of the Jeep.  In fact, she did not know that appellant had taken the Jeep's title – which she kept at her place of business – or that the Jeep had been sold.  Within days of Farmer's purchase of the Jeep, Hatter noticed that the title was missing. On March 13, 2008, she went to the Department of Motor Vehicles (DMV) to obtain a replacement title; however, she was informed that the title could not be replaced because

---

[2] Hatter fired appellant two days later, and, on March 7, 2008, she obtained a protective order against appellant.

the vehicle had been sold to Farmer.[3]  Hatter then learned that her signature had been forged on the title to the Jeep that appellant had given Farmer.

At appellant's trial on the forgery, uttering, and obtaining money by false pretense charges, Farmer provided the following testimony on direct examination by the Commonwealth:

> Q:      Did [appellant] mention anything about the title when he gave it to you?
>
> A:      He had said that it went to – that he had went to the DMV and here's your title.

Farmer testified that he had no reason to assume that the title appellant gave him was not good.

Appellant's defense counsel then cross-examined Farmer in the following manner:

> Q:      Now earlier Mr. Martin [the prosecutor] ask[ed] you if Mr. Swanson made any statements to you and you indicated that he had said he had talked to DMV, is that right?
>
> A:      Uh huh.  He said he had went to the DMV.
>
> Q:      He said that when he went to the DMV, DMV told him that if there was joint – joint names on it, with the other person as survivor, he could sign both names, correct?

At this point, the prosecutor objected to this question on hearsay grounds.

Defense counsel contended that his question was permissible because the Commonwealth "opened the door" during direct examination by eliciting from Farmer only a portion of appellant's statement to the witness.  Defense counsel asserted that appellant was entitled on cross-examination of Farmer to attempt to "show the entire statement" that appellant claimed he made to Farmer, "both the good and the bad."  Defense counsel did not proffer any information about "the entire statement" beyond the allegations contained in his question to Farmer.

---

[3] At Hatter's request, although Farmer possessed the Jeep and had paid appellant $1,000 for it, DMV placed a "freeze" on the Jeep's title.

The trial court sustained the prosecutor's objection. Defense counsel requested that the trial court reconsider, contending that the question to Farmer was not intended for the truth of the matter asserted, but instead involved appellant's state of mind when he conveyed title of the Jeep to Farmer. However, the trial court rejected this assertion, and appellant now appeals the trial court's evidentiary ruling.[4]

## II. ANALYSIS

"Decisions regarding the admissibility of evidence 'lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion.'" Michels v. Commonwealth, 47 Va. App. 461, 465, 624 S.E.2d 675, 678 (2006) (quoting Breeden v. Commonwealth, 43 Va. App. 169, 184, 596 S.E.2d 563, 570 (2004)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." Thomas v. Commonwealth, 44 Va. App. 741, 753, 607 S.E.2d 738, 743, aff'd, 45 Va. App. 811, 613 S.E.2d 870 (2005) (en banc).[5]

### A. INAPPLICABILITY OF JONES V. COMMONWEALTH TO THE FACTS OF THIS CASE

Appellant argues that the trial court committed reversible error when it permitted the Commonwealth to elicit testimony from Farmer that appellant went to DMV prior to giving him the title to the Jeep, but prohibited defense counsel from eliciting on cross-examination what appellant claims was the full context of his conversation with Farmer. In making this evidentiary ruling, the trial court erroneously permitted the Commonwealth, appellant argues, to select one

---

[4] In his petition for appeal, appellant challenged the sufficiency of the evidence supporting all three convictions and contended that the false pretenses conviction was improper because, appellant claimed, Farmer "got what he bargained for." However, an appeal was not granted on those questions presented, and, therefore, we do not address them in this opinion.

[5] The Commonwealth argues that, even if the trial court abused its discretion here, the convictions should be affirmed under the harmless error doctrine because the evidence of appellant's guilt was overwhelming. Because we hold that the trial court did not abuse its discretion here, we need not address the Commonwealth's claim of harmless error.

part of appellant's declaration to Farmer, but to omit another part of it. Appellant contends that, by questioning Farmer on direct examination about appellant's statements to him, the Commonwealth "opened the door," as in <u>Jones v. Commonwealth</u>, 50 Va. App. 437, 650 S.E.2d 859 (2007).

In <u>Jones</u>, the defendant gave a videotaped interview to police; although the Commonwealth did not reference the taped statement during its case-in-chief, the defendant mentioned during his testimony at trial that he was interviewed by the police. <u>Id.</u> at 440-41, 650 S.E.2d at 861. On cross-examination, the prosecutor asked the defendant about inconsistencies between the transcript of his videotaped statement and his testimony at trial, which the defendant attributed to the duress he felt while giving the taped statement. <u>Id.</u> at 441, 650 S.E.2d at 861. Contending that the prosecutor "opened the door" when it cross-examined him, the defendant requested that the videotaped statement be played for the jury so that the jury could evaluate for itself the extent to which his testimony contradicted the taped interview. <u>Id.</u> at 443-44, 650 S.E.2d at 862-63. On appeal from the trial court's denial of the defendant's request, this Court held that the videotape should have been admitted "as evidence of the circumstances surrounding the taking of the statement." <u>Id.</u> at 447-48, 650 S.E.2d at 864.

We find that the principles considered in <u>Jones</u> do not apply to the facts of this case. <u>Jones</u> involved the impeachment of a witness, Jones himself, who was entitled to explain why he did not include certain facts in a previous statement. <u>See id.</u> at 447, 650 S.E.2d at 864 ("When a witness is impeached with his failure to include particular facts in a previous statement, then the witness can explain why those facts were not included in the previous statement."). As this Court observed in <u>Jones</u>:

> [Jones] wanted to show the videotape to the jury to support his explanations, so the jury would not consider the inconsistencies as relevant or material to his credibility. The videotape would also show the jury who was correct about the content of the statement –

the prosecutor or [Jones]. [Jones] should have been permitted to show the jury the videotape so that the jury members could determine for themselves the extent of the inconsistencies between the testimony and the statement and could weigh the effect of those inconsistencies on [Jones's] credibility.

Id. at 449, 650 S.E.2d at 865.

Because the Commonwealth in Jones used the transcript of the videotaped statement to impeach the defendant, "it opened the door to allow [the defendant] to use this statement, too." Id. at 452, 650 S.E.2d at 866. Therefore, this Court held, the trial court in Jones "should have allowed the jurors to resolve this conflict over appellant's credibility by showing them what actually happened, rather than requiring that they rely on the paraphrasing and descriptions presented by the prosecutor and by appellant." Id. at 451, 650 S.E.2d at 866.

In this case, by contrast, appellant did not seek to elicit from a witness impeaching or rehabilitating statements. His question to Farmer did not respond to any attempt by the Commonwealth to impeach appellant's credibility, especially as appellant had not testified, or to impeach Farmer's credibility. Instead, appellant wanted to introduce evidence through Farmer of a statement that appellant *claimed* he made at the time of the sale of the Jeep.

In addition, the Commonwealth in Jones did not challenge the foundation for the admission of the videotape, as the record clearly established that the defendant there indeed made a videotaped statement to the police. Id. at 444 n.2, 650 S.E.2d at 863 n.2. Here, by contrast, appellant failed to make any proffer supporting his claim that a conversation with a DMV employee even occurred as defense counsel described during cross-examination of Farmer, or that appellant informed Farmer of the details of this conversation. Therefore, unlike the defendant in Jones, appellant was unable to show the factfinder "what actually happened" in this case. See id. at 451, 650 S.E.2d at 866.

Furthermore, appellant's argument rests on the inaccurate assertion that Farmer's testimony alluded to any conversation between appellant and DMV. Appellant's argument on appeal parallels his argument in the trial court, where his trial counsel argued:

> Mr. Martin [the prosecutor] asked Mr. Farmer if my client made any statements. I believe that Mr. Farmer said, yes, he did, that my client *had spoken* to DMV. And that's all that was said on the prosecution side.
>
> I then wanted to come in and ask did he further tell you that DMV told him it was okay to sign it where the other person was only on the title as survivor. That's what I was out to [do].

(Emphasis added). Contrary to his assertion, however, Farmer did not testify that appellant indicated he had *spoken* to anyone at DMV. Instead, Farmer simply testified that appellant said he "went to the DMV" – without giving any indication that appellant talked to anyone there. Indeed, even if Farmer had said that appellant talked to someone at the DMV, no part of that alleged conversation was repeated by Farmer on direct examination, so the Commonwealth did not "open the door," as in Jones, by presenting an incomplete repetition of this alleged conversation at DMV. Because Farmer's testimony on direct examination did not reference any *conversation* that appellant claimed to have had with a DMV representative, appellant's argument is based on an incorrect premise.

Thus, for all these reasons, Jones is not applicable to the facts of this case.

B. THE TRIAL COURT'S HEARSAY RULING

In addition, the trial court found that appellant's question to Farmer was an attempt "to get in somebody else's statements" – specifically, the non-proffered statement of the unknown DMV employee with whom appellant claimed to have spoken.[6] Thus, the trial court found that

_____

[6] In fact, the trial court found that defense counsel's question to Farmer implicated "hearsay upon hearsay" – that any testimony from Farmer about what appellant told him was one layer of hearsay (because appellant was offering his own statement to Farmer as evidence, not as a party admission) and that any testimony from Farmer about what appellant claimed that DMV

appellant's question to Farmer was not permitted under the rule against hearsay. Furthermore, the trial court rejected appellant's argument that the question concerned his state of mind and not the truth of the DMV employee's non-proffered statement to appellant – that appellant was permitted to sign Hatter's name because she was listed merely as a survivor to appellant on the title to the Jeep.

A party seeking to have a hearsay declaration admitted at trial "must clearly show" that the evidence falls within an exception to the hearsay rule. Doe v. Thomas, 227 Va. 466, 472, 318 S.E.2d 382, 386 (1984); see also Neal v. Commonwealth, 15 Va. App. 416, 420-21, 425 S.E.2d 521, 524 (1992) ("The party seeking to rely upon an exception to the hearsay rule has the burden of establishing admissibility."). An out-of-court declaration offered solely to show that it was uttered, without regard to the truth or falsity of its content, is generally not excluded by the hearsay rule and may be admissible if relevant. Bryant v. Commonwealth, 39 Va. App. 465, 473, 573 S.E.2d 332, 336 (2002). However, the out-of-court declaration must not contain "obvious indication[s] of falsification or contrivance" and "[t]he statement must refer to a presently existing state of mind." Clay v. Commonwealth, 33 Va. App. 96, 105 n.4, 531 S.E.2d 623, 627 n.4 (2000) (en banc) (citation omitted); see also Smith v. Commonwealth, 239 Va. 243, 261, 389 S.E.2d 871, 880 (1990) (holding that the defendant's taped statement to police was not admissible under the state-of-mind exception to the hearsay rule because the defendant "had a clear motive to lie" and "had sufficient time to fabricate a story").

Here, defense counsel asked Farmer to confirm (or deny) that appellant had justified signing the title in both his and Hatter's names by explaining that a DMV employee had

---

told him constituted another layer of hearsay. As this Court stated in West v. Commonwealth, 12 Va. App. 906, 407 S.E.2d 22 (1991), "both the primary hearsay declaration and each hearsay declaration included within it must conform to a recognized exception to the hearsay rule." Id. at 910, 407 S.E.2d at 24.

supposedly told him incorrectly that, if the title to the Jeep had "joint names on it, with the other person as survivor, [appellant] could sign both names" on the title. This statement that appellant claimed to make to Farmer contained an obvious falsehood or contrivance: Hatter was *not* listed merely as the survivor to appellant on the title to the Jeep. Instead, the Jeep was titled in both Hatter's and appellant's names – i.e., as "SWANSON, STEVEN JAMES, *AND* HATTER, JENNIFER LYNN, *OR* SURV." (Emphasis added). Appellant, who had taken the certificate of title from Hatter without her knowledge and, therefore, had the certificate of title when he went to DMV, was aware that Hatter's ownership of the vehicle was not listed on the title merely as the survivor to him.[7] In addition, given the timing of appellant's alleged statement to Farmer, the trial court certainly was entitled to find that this alleged statement had obvious signs of falsification or contrivance. At the time appellant allegedly said that a DMV official told him that he could sign the title, appellant was trying to sell the Jeep that he did not exclusively own, and keep the entire purchase price, without the knowledge of the other person listed on the title. Thus, the statement appellant claimed to make to Farmer showed obvious signs of falsification or contrivance related to both what the title to the Jeep actually stated and whether the conversation even took place.

---

[7] Appellant argues for the first time on appeal that, under Miller v. Commonwealth, 25 Va. App. 727, 492 S.E.2d 482 (1997), he relied in good faith on advice from DMV. In Miller, this Court recognized a due process defense available to a defendant "for reasonably and in good faith doing that which he was told he could do," id. at 737, 492 S.E.2d at 487, by "a public officer or body charged by law with responsibility for defining permissible conduct with respect to the offense at issue." Id. at 739, 492 S.E.2d at 489. Appellant did not make an argument under Miller (or any due process argument) to the trial court, and, therefore, this argument is procedurally defaulted. See Rule 5A:18. Furthermore, appellant does not raise either the good cause or ends of justice exceptions to Rule 5A:18, and this Court may not invoke an exception to Rule 5A:18 *sua sponte*. Edwards v. Commonwealth, 41 Va. App. 752, 766, 589 S.E.2d 444, 448 (2003) (en banc). Therefore, we decline to address this argument by appellant.

Moreover, after hearing credible testimony from Hatter that the title had been stolen from her office and that her signature had been forged on the title, the trial court was certainly entitled to find that defense counsel's question to Farmer did not actually concern appellant's state of mind when he signed Hatter's name on the title or when he sold the Jeep to Farmer. See Rabeiro v. Commonwealth, 10 Va. App. 61, 64-65, 389 S.E.2d 731, 733 (1990) ("The factual determinations which are necessary predicates to rulings on the admissibility of evidence and the purposes for which it is admitted are for the trial judge and not the jury."). The trial court could reasonably conclude that this supposed statement by appellant was simply further evidence of appellant's attempt to cover up his crime by giving Farmer excuses for Hatter's lack of involvement in the sale of the Jeep that she owned. Therefore, the trial court did not abuse its discretion when it sustained the hearsay objection to defense counsel's question to Farmer.

### III. CONCLUSION

For the foregoing reasons, we affirm appellant's convictions.

Affirmed.