COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Judges Humphreys, McCullough and Decker
Argued at Norfolk, Virginia


BRUCE ANTOINE HOWARD

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0793-14-1                JUDGE MARLA GRAFF DECKER
                                                    MAY 5, 2015
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
David F. Pugh, Judge

Charles E. Haden for appellant.

John W. Blanton, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Bruce Antoine Howard appeals his conviction for malicious wounding, in violation of Code

§ 18.2-51.  Specifically, he suggests that the trial court erred by excluding certain evidence, the

court used an incorrect legal standard in determining his guilt, and the evidence was insufficient to

support his conviction.  For the reasons that follow, we affirm the judgment of the trial court.

I.  BACKGROUND

At the appellant's bench trial for malicious wounding, the Commonwealth presented

evidence that the appellant attacked Brittnee Porter, the mother of his two children.  Porter

testified that the altercation occurred after she stopped her vehicle when she saw his car while

she was on her way to the store around midnight.  She explained that she repeatedly knocked on

the front door of the house outside which his car was parked because he owed her money.  She

testified that when she went around the house and knocked on the side door, the appellant

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

opened the front door and began yelling "what are you doing here." The appellant charged at Porter and knocked her to the ground. She stood up, and the appellant "picked [her] up and slammed [her] down." He then punched her repeatedly, again "slamming [her] to the ground." Porter managed to run to the door of the house. She knocked on the door and begged for "somebody [to] please call the police." The appellant ran to Porter's car. Porter followed and tried to get her keys out of the car. The appellant began to strike her again. Porter explained that the appellant abruptly stopped, "and he was like oh, my God, Brittnee, what did I do to you?" Only then was Porter able to flee.

Porter described her injuries, saying that she was "completely bloody" and had blood pouring from her head. She went to the hospital where she received several stitches on her forehead. She was hospitalized for two days as a result of her injuries. The Commonwealth entered photographs into evidence showing her injuries. Porter had a scar on her forehead as a result of the attack. She testified that at the time of the offense she and the appellant were engaged to be married and she was seven months pregnant.

The victim also testified that the appellant called her that night after the attack. He cried and screamed hysterically, upset about "what he did." The appellant later sent Porter a text message that she "deserved what happened to [her]."

The appellant challenged Porter's credibility on cross-examination. She admitted that she saw the appellant's car on a "dead-end street," but also stated that it was a thoroughfare to a convenience store. Porter acknowledged that she told the police officer who was investigating that she stopped in order to "confront" the appellant. Porter said that she did not remember "fight[ing] back," but conceded that she may have injured the appellant in an attempt to escape. Porter acknowledged that she waited until the day after the attack to contact the police.

Crystal Dunn, the resident of the house where the altercation occurred, testified for the defense. She stated that Porter arrived at her home screaming profanities and banging on the doors and windows of the house. Dunn said that when the appellant stepped outside, Porter "began hitting him" in the face and head. According to Dunn, the appellant tried to convince Porter to leave and reached for her hands only "to keep her from hitting him." Dunn further testified that Porter had parked directly behind the appellant's vehicle, and the appellant asked Porter several times to move her car so he could leave. Further describing the incident, Dunn said that the appellant and Porter "both lost their footing" and fell to the ground. The appellant received cuts on his face and chest. He eventually was able to move Porter's car, and he drove away in his own vehicle. Dunn did not see the appellant inflict any injuries on Porter.

The appellant testified in his own defense. He corroborated Dunn's version that Porter struck him when he opened the door to the house. The appellant said that they both fell to the ground. He stated that he fell on top of Porter and broke his arm and thumb. The appellant also said that Porter bit and scratched him. He explained that he tried to escape and pushed her from him, but she continued to "pull[] on [him]" and hit the back of his head. The appellant tried to move Porter's vehicle, which blocked his car's exit. Porter stopped him and punched him. The appellant asserted that he only pushed Porter away in order to flee. He denied striking her in any way.

At various times during the trial, the appellant attempted to introduce evidence relating to Porter's subsequent arrest on an unrelated charge. The trial court did not allow that evidence to be admitted.

The appellant argued to the trial court that the Commonwealth failed to prove that he intended to *permanently* injure the victim. A discussion ensued with the Commonwealth and the

- 3 -

court about whether proof of a permanent injury or the intent to inflict permanent injury was required to establish malicious wounding.

The trial court found the appellant guilty of malicious wounding. In doing so, it expressly found Porter to be credible. It explained that Dunn's testimony "defie[d] belief." The court adopted Porter's version of the incident, specifically that the appellant charged at her and struck her repeatedly on her head. It noted that the photographs of Porter's injuries corroborated her testimony. The court observed that the fact finder was entitled to infer "that a person intends the immediate direct and necessary consequences of his voluntary act." Additionally, it found that the victim had a permanent scar from the incident. Finally, the court commented that Porter's reason for stopping at Dunn's home was "of no moment." The court sentenced the appellant to twenty years in prison with fifteen years and four months suspended.

## II. ANALYSIS

The appellant lists fourteen assignments of error that effectively raise three issues. He challenges the exclusion of certain evidence, the trial court's application of the legal standard for proving intent under the malicious wounding statute, and the sufficiency of the evidence to prove intent.

### A. Exclusion of Evidence

The appellant argues that the trial court erred by not admitting certain evidence at trial. Specifically, he contends that the court abused its discretion by not allowing him to cross-examine Porter about a warrant for her arrest, not permitting him to ask her about a copy of the warrant for her arrest, not allowing Dunn to testify about the reason that Howard gave her not to call the police, and not admitting a prior statement by Porter for impeachment purposes.

It is well established that "[t]he admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of

- 4 -

discretion." Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988). "'Only when reasonable jurists could not differ can we say an abuse of discretion has occurred.'" Creamer v. Commonwealth, 64 Va. App. 185, 194, 767 S.E.2d 226, 230 (2015) (quoting Thomas v. Commonwealth, 44 Va. App. 741, 753, 607 S.E.2d 738, 743, adopted on reh'g en banc, 45 Va. App. 811, 613 S.E.2d 870 (2005)). We review the appellant's challenges based upon these legal standards.

### 1. Cross-Examination of Porter About the Arrest Warrant and Arrest

The appellant contends that he should have been allowed to cross-examine Porter about the warrant for her arrest and her subsequent arrest. He claims that such evidence was relevant to support his stated purpose for not calling the police when Porter allegedly began the altercation.

During cross-examination of Porter, the appellant's counsel asked if, at the time of the incident, she was aware of a warrant for her arrest that was pending. Porter responded "[n]o." The Commonwealth objected to any further questions regarding the arrest warrant, stating that it was irrelevant. The appellant proffered that a felony warrant for the victim's arrest was served on her shortly after the altercation. He wanted to show Porter the warrant in order to have her identify it. The appellant explained that the arrest warrant was material because he anticipated that his defense witnesses would testify that they did not call the police at the time that Porter arrived because they were aware of the arrest warrant and the appellant "didn't want the mother of his child[ren] arrested." The trial court ruled that the appellant could not ask the victim about the warrant because no evidence proved that she was aware of it at the time of the incident.

The Commonwealth similarly objected to the appellant's effort to ask the victim if she was arrested on May 26, 2013, two days after the instant offense. The court sustained the objection, holding that the arrest was not relevant.

Before evidence can be admitted, its proponent must lay a foundation supporting a finding that it is relevant to the proponent's theory of the case. Cousins v. Commonwealth, 56 Va. App. 257, 264, 693 S.E.2d 283, 286 (2010). "Evidence is relevant if it has any logical tendency, however slight, to establish a fact at issue in the case." Ragland v. Commonwealth, 16 Va. App. 913, 918, 434 S.E.2d 675, 678 (1993).

Based on the record before the court, the victim had no knowledge, at the time of the incident, of the arrest warrant. Consequently, the warrant was not relevant or material to the case. Further, Porter's arrest on the warrant occurred after the incident and had nothing to do with the altercation. Therefore, her arrest also was not relevant to the malicious wounding charge. In light of this record, the trial court did not abuse its discretion by refusing to allow the appellant further cross-examination of Porter regarding the warrant or the arrest.

## 2. Document Not Properly Authenticated

The appellant argues that the trial court erred in denying him the right to cross-examine the victim about the arrest warrant based on the fact that it was not a certified copy. The Commonwealth asserts that the trial court did not actually rule on whether the arrest warrant was authenticated, and, even if it did, the appellant did not object.

At trial, the appellant explained that he wanted to introduce the arrest warrant into evidence. The Commonwealth stated that it would not object to the introduction of the document if it was a certified copy. The appellant responded, "If the Commonwealth doesn't want to take judicial knowledge of their own document, I'm okay with that, Judge." The trial court reminded the appellant that the court, not the Commonwealth, took judicial notice of its orders. After that exchange, the appellant did not attempt to offer the document into evidence. Consequently, the trial court never ruled on the admissibility of the document. "Because [the appellant] was denied

nothing by the trial court, there is no ruling for us to review." Fisher v. Commonwealth, 16 Va. App. 447, 454, 431 S.E.2d 886, 890 (1993).

### 3. Dunn's Testimony

The appellant argues that the trial court erred by not allowing him to question Dunn about what he told her when the victim was knocking on the door. The appellant argues that the statement was admissible because it was offered to show his state of mind at the time of the offense. See Rule 2:803(3) (providing an exception to the rule excluding hearsay if a statement shows the declarant's "then existing state of mind, emotion, sensation, or physical condition").

After the appellant's failed attempts to enter into evidence Porter's warrant and her arrest, Dunn testified that the appellant asked her not to call the police because Porter had an outstanding warrant. The Commonwealth objected to Dunn's testimony as hearsay. The appellant responded that the testimony was not offered for the truth of the matter, but to explain why Dunn did not call the police. The court concluded that the appellant was actually offering the testimony for the truth of the matter because he had already attempted to get evidence of Porter's arrest into the record during her cross-examination. Consequently, the trial court sustained the objection.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 2:801(c). Generally, "hearsay evidence is inadmissible unless it falls within one of the recognized exceptions to the hearsay rule." Robinson v. Commonwealth, 258 Va. 3, 6, 516 S.E.2d 475, 476 (1999); see also Rule 2:802. The party seeking to rely on an exception to the hearsay rule "'must clearly show' that the evidence falls" within that exception. Swanson v. Commonwealth, 56 Va. App. 147, 156, 692 S.E.2d 256, 260 (2010) (quoting Doe v. Thomas, 227 Va. 466, 472, 318 S.E.2d 382, 386 (1984)).

The specific facts of this case provided a sufficient basis for the trial court to conclude that the appellant offered the testimony "for the truth" of Porter's arrest and that consequently it was inadmissible hearsay. Cf. id. at 157-58, 692 S.E.2d at 261 (affirming the exclusion of purported state-of-mind testimony in part because the trial court acted within its province by ruling on the threshold factual determinations necessary to determine admissibility of evidence). Therefore, the court did not abuse its discretion in ruling that the appellant did not meet his burden of establishing the admissibility of the proffered evidence and sustaining the Commonwealth's objection.

### 4. Porter's Prior Statement

The appellant argues that the trial court erred by not admitting a prior statement of the victim to the police which was offered for impeachment purposes. The Commonwealth responds that the testimony about Porter's prior inconsistent statement was admitted and that the record does not support the appellant's assertion that the trial court did not consider that evidence for impeachment purposes.

On direct examination, Porter testified that the appellant owed her money. According to Porter, she went to the store to buy milk, and on her way to the store, she saw the appellant's car in a driveway outside of a home. Porter testified that she went to the house and knocked on the door to ask the appellant for the money he owed her. On cross-examination, Porter denied going to the house to confront the appellant about her suspicions that he was having an affair.

The appellant asked Officer Cavanaugh, of the City of Newport News Police Department, whether the victim told him that the dispute was over money. Cavanaugh responded negatively. The appellant then asked the officer, "How did she describe the incident? Why did it get started?" The Commonwealth objected based on hearsay "unless there's something to be impeached." The appellant argued that if Porter told Cavanaugh that the fight was about money,

then it would be consistent with her prior testimony; however, if she told him it was a fight over another woman, then it would be inconsistent. The trial court reminded the appellant that the victim testified that she did not say anything to the officer about money, and therefore any testimony from Cavanaugh that Porter did not tell him about money could not be admitted for impeachment purposes.

The appellant then asked Officer Cavanaugh what the victim told him about why she was looking for the appellant. Cavanaugh testified that "[s]he advised that she . . . was driving around to try to locate him because she felt that he was with another woman." This evidence was admitted without objection.

The appellant argues that the trial court refused to admit the victim's statement to the officer for impeachment purposes. Although he admits that the trial court allowed the statement into evidence, he contends that the court did not consider it for impeachment of Porter's credibility.

The credibility of each witness is relevant to the case. Via v. Commonwealth, 42 Va. App. 164, 183, 590 S.E.2d 583, 592 (2004). Evidence relevant to a witness' credibility includes that "'which would tend to convince the [fact finder] that the witness'[] perception, memory, or narration is defective or that his or her veracity is questionable.'" Id. at 183-84, 590 S.E.2d at 592 (quoting McCarter v. Commonwealth, 38 Va. App. 502, 506, 566 S.E.2d 868, 870 (2002)). "'[T]he opposing party may impeach the witness by drawing into question the accuracy of the witness'[] perception, recordation, recollection, narration, or sincerity.'" Id. at 183, 590 S.E.2d at 592 (quoting McCarter, 38 Va. App. at 506, 566 S.E.2d at 869-70). Cavanaugh's testimony that Porter told him that she had looked for the appellant because she thought that he was with another woman conflicted with her testimony that she happened to see the appellant's

- 9 -

car and stopped because he owed her money. The officer's testimony about Porter's statement to him therefore was relevant to Porter's credibility.

Cavanaugh's testimony about Porter's statements regarding her purpose for going to the house was admitted into evidence. The record does not provide any basis for us to conclude that the trial court did not consider this evidence for its impeachment purposes. See Yarborough v. Commonwealth, 217 Va. 971, 978, 234 S.E.2d 286, 291 (1977) (holding that a trial court is presumed to know the law and to properly apply it to the facts in a case). The judge observed that testimony from Cavanaugh that Porter did not tell him that the altercation started over money would not contradict Porter's own testimony that she did not tell the officer about money. This proffered impeachment purpose differed from the second proffered impeachment purpose of contrasting Porter's inconsistent statements about how the encounter began. See id. ("[W]e will not fix upon isolated statements of the trial judge taken out of the full context in which they were made, and use them as a predicate for holding the law has been misapplied.").

The trial court had the opportunity to see and hear the witnesses. The court, as the trier of fact, stated that it found the victim to be credible. It explained that "[t]he purpose for . . . Porter[] going around there is of no moment as far as I'm concerned if I adopt her testimony as to what happened when she got there." In the end, the court determined that the conflicting statements about why she was at Dunn's house did not affect her credibility about what occurred once the appellant came outside of the house. Determining the witness' credibility was within the trial court's purview as the fact finder. See Towler v. Commonwealth, 59 Va. App. 284, 291, 718 S.E.2d 463, 467 (2011). Consequently, we hold that there is no error.

*B. Trial Court's Application of the Legal Standard*

The appellant argues that the trial court misstated the necessary requirements for a malicious wounding conviction. He suggests that the court incorrectly determined that the

offense did not require proof of the specific intent to maim, disable, disfigure, or kill the victim. The Commonwealth does not contest the appellant's characterization of the trial court's understanding of the law. Instead, the Commonwealth argues that any error was harmless.

During his motion to strike and at the conclusion of all the evidence, the appellant argued that the prosecution had to prove that he *intended* to *permanently* harm the victim.[1] The Commonwealth replied that a permanent injury was not required, although it was required for aggravated malicious wounding. At the sentencing hearing, the appellant commented that based on the state of the law, he inferred that the court had found "that there was intent to commit permanent damage." The Commonwealth objected, claiming that was "a misstatement of the law," because the charge was "not aggravated." The trial court made some comments indicating that a conviction for malicious wounding did not require an intent to permanently injure and that such an intent was required only for a conviction for *aggravated* malicious wounding. The record is not free of ambiguity on this point. See Yarborough, 217 Va. at 978, 234 S.E.2d at 291 (explaining that the presumption that a trial court properly applied the law to the facts in a case can be overcome only by "clear evidence to the contrary"). In spite of a record that is not free of ambiguity regarding the requirement to prove "intent," we will assume that the trial court erred and proceed to resolve the case on the basis of harmless error.

"[H]armless-error review [is] required in *all* cases." See Ferguson v. Commonwealth, 240 Va. ix, ix, 396 S.E.2d 675, 675 (1990) (citing Code § 8.01-678). A non-constitutional error, such as this one, is harmless if, "'when all is said and done, . . . the error did not influence the [trier of fact], or had but slight effect.'" Ramsey v. Commonwealth, 63 Va. App. 341, 356, 757

---

[1] To "'be guilty [of malicious wounding], a person must intend to permanently, not merely temporarily, harm another person.'" Burkeen v. Commonwealth, 286 Va. 255, 259, 749 S.E.2d 172, 174 (2013) (alterations in original) (adopting this Court's holding in Johnson v. Commonwealth, 53 Va. App. 79, 101, 669 S.E.2d 368, 378 (2008)).

S.E.2d 576, 584 (2014) (quoting Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 728, 731 (2001)); accord Anderson v. Commonwealth, 282 Va. 457, 467, 717 S.E.2d 623, 628 (2011) (applying this test in the context of review of a bench trial); Smoot v. Commonwealth, 18 Va. App. 562, 567, 445 S.E.2d 688, 691 (1994) (reviewing the failure to instruct the jury on an element of the offense under the non-constitutional harmless error test). However, if we "'cannot say, with fair assurance, after pondering all that happened . . . , that the judgment was not substantially swayed by the error, . . . the conviction cannot stand.'" Ramsey, 63 Va. App. at 356, 757 S.E.2d at 584 (quoting Clay, 262 Va. at 260, 546 S.E.2d at 731-32). Thus, if this Court can conclude from the record that the trial court's application of the wrong standard for "intent" did not affect its finding of guilt, the error was harmless.

"'Intent is the purpose formed in a person's mind at the time an act is committed.'" Johnson v. Commonwealth, 53 Va. App. 79, 100, 669 S.E.2d 368, 378 (2008) (quoting Commonwealth v. Taylor, 256 Va. 514, 519, 506 S.E.2d 312, 314 (1998)). A defendant's intent, due to its very nature, "may, and often must, be inferred from the facts and circumstances in [the] particular case." Ridley v. Commonwealth, 219 Va. 834, 836, 252 S.E.2d 313, 314 (1979). Circumstantial evidence is treated in the same manner as direct evidence. See Chambliss v. Commonwealth, 62 Va. App. 459, 465, 749 S.E.2d 212, 215 (2013). It "'is as competent and is entitled to as much weight.'" Id. (quoting Salcedo v. Commonwealth, 58 Va. App. 525, 535, 712 S.E.2d 8, 12 (2011)).

"It is proper for a court to consider not only the method by which a victim is wounded, but also the circumstances under which that injury was inflicted in determining whether there is sufficient evidence to prove an intent to maim, disfigure, disable or kill." Burkeen v. Commonwealth, 286 Va. 255, 260-61, 749 S.E.2d 172, 175 (2013). Although "[u]nder ordinary circumstances an intent to maim may not be presumed from a blow with a bare fist[,] . . . an

assault with a bare fist may be attended with such circumstances of violence and brutality that an intent to kill may be presumed." Fletcher v. Commonwealth, 209 Va. 636, 640, 166 S.E.2d 269, 273 (1969). Further, "[t]he finder of fact may infer that a 'person intends the natural and probable consequences of his or her acts.'" Johnson, 53 Va. App. at 100, 669 S.E.2d at 378 (quoting Velasquez v. Commonwealth, 276 Va. 326, 330, 661 S.E.2d 454, 456 (2008)).

The trial court expressly found that Porter was credible and adopted her testimony regarding the altercation. Porter testified that the appellant "charg[ed]" at her and knocked her to the ground. When she stood up, the appellant "slammed [her] down" and repeatedly punched her in the head. Porter, who was seven months pregnant, described blood pouring from her head. She received several stitches on her forehead and was hospitalized for two days. A scar remained on her forehead from the attack, which the court found was "permanen[t]." The court viewed eight photographs showing the condition of Porter's head and hand after the attack. Once the trial court accepted Porter's testimony as credible, the only reasonable inference that it could make from her description of the brutal attack was that the appellant intended to permanently injure her. See generally Brandau v. Commonwealth, 16 Va. App. 408, 412-13, 430 S.E.2d 563, 565-66 (1993) (holding that the only reasonable conclusion to be reached from the evidence that the defendant fired a gun multiple times through a door with a person on the other side was that he intended to kill the victim). In light of the trial court's determination that Porter was credible and its acceptance of her testimony, any erroneous understanding on the judge's part regarding the type of intent required under the statute did not affect the judgment. Therefore, any error was harmless.

### C. Sufficiency of the Evidence

The appellant argues that the evidence was insufficient to prove that he had the requisite intent to permanently injure the victim. He challenges Porter's credibility and stresses the fact

that he struck her with his fist rather than a weapon. The appellant also suggests that the Commonwealth did not exclude the reasonable hypothesis that Porter sustained the injury to her head by "accidental means."

In this Court's review of the sufficiency of the evidence to support a conviction, we will affirm the decision unless the trial court was plainly wrong or the conviction lacked evidence to support it. See, e.g., Burkeen, 286 Va. at 258, 749 S.E.2d at 174. The Court examines "'the evidence in the light most favorable'" to the Commonwealth, as "'the prevailing party at trial[,] and consider[s] all reasonable inferences fairly deducible from that evidence.'" Id. at 258-59, 749 S.E.2d at 174 (alteration in original) (quoting Clark v. Commonwealth, 279 Va. 636, 640, 691 S.E.2d 786, 788 (2010)). To do so, the Court "'discard[s] the evidence of the accused in conflict with that of the Commonwealth.'" Johnson, 53 Va. App. at 99, 669 S.E.2d at 378 (quoting Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980)). If the evidence is sufficient to support the conviction, the reviewing appellate court will not "substitute its own judgment for that of the trier of fact, even if its opinion might differ from the conclusions reached by the [fact finder]." Jordan v. Commonwealth, 286 Va. 153, 156-57, 747 S.E.2d 799, 800 (2013). Finally, whether a "hypothesis of innocence is reasonable is a question of fact and is 'subject to deferential appellate review.'" Blow v. Commonwealth, 52 Va. App. 533, 540, 665 S.E.2d 254, 257 (2008) (quoting Haskins v. Commonwealth, 44 Va. App. 1, 9, 602, S.E.2d 402, 406 (2004)). We review the challenge to the sufficiency of the evidence under these well-established legal principles.

As discussed in the previous section, the trial court expressly adopted Porter's testimony regarding the altercation. Specifically, the court found that the appellant charged at Porter, knocked her to the ground, and repeatedly punched her in the head. The appellant suggests that Porter's testimony was "inherently incredible." However, the law is clear that determining the

credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact, who has the ability to hear and see them as they testify. Towler, 59 Va. App. at 291, 718 S.E.2d at 467. "The conclusions of the fact finder on issues of witness credibility 'may only be disturbed on appeal if this Court finds that [the witness'] testimony was inherently incredible, or so contrary to human experience as to render it unworthy of belief.'" Johnson v. Commonwealth, 58 Va. App. 303, 315, 709 S.E.2d 175, 181 (2011) (alteration in original) (quoting Robertson v. Commonwealth, 12 Va. App. 854, 858, 406 S.E.2d 417, 419 (1991)). "Potential inconsistencies in testimony" are resolved by the finder of fact. Towler, 59 Va. App. at 292, 718 S.E.2d at 467.

Porter's testimony was not inherently incredible or so contrary to human experience as to render it unworthy of belief. Cf. Willis v. Commonwealth, 218 Va. 560, 563-64, 238 S.E.2d 811, 813 (1977) (holding that the witness' account of the crime was "incredible as a matter of law" due to numerous "contradictions and inconsistencies" within her testimony). Therefore, we are bound by the trial court's determination that Porter was credible and its acceptance of her testimony. Further, the trial court, as the finder of fact, was entitled to reject the appellant's theory, or "hypothesis of innocence," that Porter sustained the injury to her head by accident when the two fell to the ground. As discussed in the previous section, Porter's description of events was sufficient to support the factual finding that the appellant intended to cause Porter permanent injury. For these reasons, the trial court's decision was not plainly wrong or without evidence to support it.

### III. CONCLUSION

We hold that regarding the trial court's evidentiary decisions, the appellant either failed to preserve those challenges or to demonstrate that the court abused its discretion. Further, any error in the trial court's application of the definition of intent under the statute was harmless. Finally, we

hold that the evidence was sufficient to prove that the appellant intended to inflict a permanent injury on the victim and he was guilty of malicious wounding.  Consequently, we affirm the appellant's conviction.

Affirmed.