# Richmond

GEORGE W. UPTON V. COMMONWEALTH OF VIRGINIA.

April 10, 1939.

Record No. 2104.

Present, Campbell, C. J., and Holt, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*W. Henry Cook* and *Edward M. Hudgins,* for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *Walter E. Rogers, Special Assistant,* for the Commonwealth.

HOLT, J., delivered the opinion of the court.

George W. Upton, plaintiff in error, has been found guilty of maliciously shooting one James Carter and has been sentenced to serve a year in the penitentiary.

Upton was a farmer and woodcutter and lived some several miles south of South Hill. He owned both a truck and an automobile. On Saturday afternoon, October 9, 1937, Upton left home for South Hill in his truck, taking with him several employees. At about eight o'clock he stopped at Matthew Valentine's service station to purchase a soft drink. This station is located approximately one mile south from where Upton's lane enters the highway, and his home is about one-half mile west of that point. While in the station he had some words with a negro boy, Andrew Jones, charged with having stolen his chickens. Jones said that he made some threats but did not state their nature although some mention was made of a gun or rifle.

After finishing his drink, Upton, in his truck, left for South Hill, taking with him Willie Jiggetts, but before reaching town, his truck broke down. He and Jiggetts then continued on afoot and came upon the car of William

Walker which had slipped into a roadside ditch. They helped him put his car back on the road and were then picked up by a passing car and carried to Mitchell's store, which was about three miles from Upton's home.

After tarrying awhile, they left at about a quarter past nine and went down the road until they reached the lane leading to his home; here they separated. This point, as we have seen, was about a mile from the service station and about a half a mile from the home. Upton's wife says that he came in about ten o'clock. This is corroborated by William Hendricks, who was there to see him on business. It was raining and the night was dark. Their evidence is that Upton did not again leave.

At no time that evening did Upton carry a rifle, from which it follows that if he shot Carter at the service station, he must have gone home for his rifle after leaving Jiggetts. His lane is about one-half mile long, and it is a mile from where it enters the highway to the service station, so that it is three miles from his home to the service station and back. If he left Mitchell's store at about a quarter past nine, he had to walk two and one-half miles before he reached his lane, which, added to the three miles, would make five and one-half miles which he would have had to travel on foot in order to go home, come back to the service station and return by about ten o'clock, all within three-quarters of an hour.

This is not probable, and it is made more improbable by the fact that he had no reason to believe that Carter was then at this service station.

For the Commonwealth it is proven by a ballistic expert that the bullet which struck Carter came from a rifle owned by Upton, but it was his custom to keep it in his automobile, and so others might have had access to it.

This is the only unchallenged evidence which tends to connect the accused with the shooting. After Carter was shot, he went to South Hill, seven or more miles away. How he went and when he arrived, we do not know. Upon reaching that town, he inquired of B. L. Smithson, a police

officer in that town, as to where he might find a doctor and was by him directed to the office of Dr. L. H. Bracey. The wound was not severe, and the doctor removed the bullet, a 22-rifle bullet, from Carter's foot, after which Carter told Smithson that Upton had shot him. To this testimony, timely and proper objection was made.

While it has no bearing upon the verdict in this case, it is interesting to note that in an affidavit purporting to set out after-discovered evidence, Carter denied this statement and said that he did not know who had shot him and that his relations with Upton had been and still were friendly.

If the testimony of Smithson is admissible at all, it must be because a statement claimed to have been made by Carter in his presence was a part of the *res gestae*.

This term lacks scientific precision and has been much criticized, but it has been too often passed upon by our court and others to be discarded at this late date. One class of statements to which this term concededly applies is limited to those which are spontaneous and impulsive. This the Commonwealth admits but contends that these conditions obtained here.

Neither time nor distance is conclusive. One made unconscious by an assault might be conveyed to a distant hospital and might long remain in that condition, but if, in struggling back to consciousness, he were to name his assailant, that would be admissible in evidence, for it would be a statement both spontaneous and impulsive. In the instant case, Carter was available as a witness, but he was not called and so could not be cross-examined.

In *Young* v. *Stewart,* 191 N. C. 297, 131 S. E. 735, 738, the court said, "The statement must be instinctive rather than narrative or the result of deliberation," and quotes with approval this from 22 C. J. 461:

"In order for a declaration to be admissible as a part of the *res gestae,* it must be the spontaneous utterance of the mind, while under the influence of the transaction, the test being, it has been said, whether the declaration was the facts

talking through the party or the party talking about the facts."

In *State* v. *Johnson,* 107 W. Va. 216, 148 S. E. 4, and in *State* v. *Hicks,* 107 W. Va. 418, 148 S. E. 131, the court refused to admit statements because the time which had elapsed between them and the shooting was not shown, although in the *Johnson Case* there was evidence that it was made "shortly" thereafter. The court said that time was not necessarily a determining factor but was an important one.

In *Waldele* v. *New York Central & Hudson River R. Co.,* 95 N. Y. 274, 47 Am. Rep. 41, appears an extended review of this subject. It was there held that a statement made one-half hour after the accident was inadmissible.

In *Aldridge's Adm'r* v. *Midland Blast Furnace Co.,* 78 Mo. 559, it appears that after one was injured, a physician who lived a mile away was sent for. The injured party was put into a buggy and taken home. A statement then made and made an hour after the hurt was inadmissible.

██ It is for these reasons that time is important. The statement must not be a narrative, and it must not be a product of reasoning and deliberation.

This was the test applied by Kelly, J., in *Washington-Virginia Ry. Co.* v. *Deahl,* 126 Va. 141, 100 S. E. 840, where he said that a statement which "bears no evidence of reflection or deliberation or calculation" is admissible; otherwise not.

In *Virginia & Tennessee R. R. Co.* v. *Sayers,* 26 Gratt. (67 Va.) 328, it was held that a statement made "some time after" an accident was inadmissible.

██ In *Huffman* v. *Commonwealth,* 168 Va. 668, 190 S. E. 265, a witness testified that he reached Riddle a "few minutes" after he had been shot. A statement of Riddle's then made was admitted. The court said that obviously it was not premeditated, and in support of its conclusion cited *Bowles* v. *Commonwealth,* 103 Va. 816, 48 S. E. 527. It was pointed out that the court was vested with wide discretion but that this discretion was judicial.

On the subject of spontaneous declaration, see monographic note to case of *Jordan* v. *Commonwealth*, 25 Gratt. (66 Va.) 943.

As we have seen, the contention of the Commonwealth is that the statement in judgment was spontaneous and impulsive.

As stated in Corpus Juris, the true test is this: Were the facts talking through the party or was the party talking about the facts? Was the statement made *dum fervet opus* or was it a narrative of a past occurrence?

■ Carter was not badly wounded; he was suffering from no shock and had traveled several miles in order to have a physician extract the bullet from his foot. The time which had passed does not appear, and so without hesitancy, we reach the conclusion that his statement was not one in which the facts themselves were speaking. By no fair construction could what he said to this policeman be regarded as spontaneous.

For reasons stated, the judgment appealed from should be reversed, and unless new evidence is uncovered, this case should be dismissed by the trial court to which it is remanded.

*Reversed and remanded.*