### Richmond

JOHN DOE

v.

CHARLES RANDOLPH THOMAS

Record No. 811910.

June 15, 1984.

Present: All the Justices.

*William F. Stone, Jr. (Stone & Worthy*, on briefs), for appellant.

*John D. Epperly (Broaddus, Epperly, Broaddus & Hankins*, on brief), for appellee.

POFF, J., delivered the opinion of the Court.

On this appeal, the dispositive issue is whether the trial court committed reversible error by admitting into evidence an extra-judicial statement under the spontaneous-declaration exception to the hearsay rule. The appellant, defendant below, also challenges the credibility of the evidence underlying the plaintiff's verdict.

Charles Randolph Thomas filed a motion for judgment against John Doe, an unknown motorist, seeking damages for personal injuries which he alleged were the proximate result of Doe's negligent operation of his automobile. The medical evidence showed that, as a result of his injuries, Thomas was permanently paralyzed below his chest. The trial court entered judgment on a jury verdict awarding Thomas $75,000 in damages, and we granted Doe an appeal.

The accident occurred about 11:00 p.m. on July 6, 1979, at a point south of Martinsville where U.S. Route 220 crosses Smith River. The river is spanned by twin bridges, each carrying two lanes of traffic. The northbound and southbound roadways south of the river are separated by a wide strip of grass and shrubs. The northbound lanes curve gradually to the right as they approach the bridge, and the median strip slopes down to the crest of a bank which is 74 feet from the southern edge of the river and 35 feet above the surface of the water. The lawful speed limit south of the bridge was 45 m.p.h.

Returning to his home after a dance, Thomas was driving in the right northbound lane approaching the bridge. Thomas testified that he was traveling "[a]pproximately 40 miles per hour" behind Doe's car which was following a flatbed truck. Thomas was not aware of any traffic behind him. As he was entering the curve, Thomas "pulled out in the left-hand lane and started to pass and the [Doe] car come over and crowded me off the road." Thomas "eased the . . . car over to the left", applied his brakes, struck a reflector post in the median strip, and traveled through wet grass down the slope to the crest of the bank overlooking the river. The car was found in waist-high water near the south shore of an island in the river, and Thomas was rescued from the top of his car.

Cloyd King, a part-time deputy sheriff, testified that Thomas passed him at "a very high rate of speed" on Route 220 one mile south of the river. King activated his siren and red lights, pursued Thomas, and attempted to stop him when he slowed for a traffic light. The light changed to green, and Thomas "speeded up again". King, who increased his speed to "[a]pproximately 90 miles an hour", felt that he was "losing ground." King said that, as the Thomas car "went into the curve, it didn't turn with the curve", but instead "went in the median between the bridges and then into the river." At the time this happened, King "was 300 feet behind Mr. Thomas." Although King never saw a flatbed truck, he had seen a car in the curve ahead of Thomas. He was unable to say whether or not that car had crowded Thomas into the median strip.

As detailed by the investigating officer and a civil engineer who prepared a plat of the scene of the accident, the physical evidence indicated that the Thomas car traveled 310 feet through high grass in the median strip to the crest of the bank, where it became airborne, broke off the top of a telephone pole installed in the lower floodplain, and came to rest in the river 165 feet from the crest of the bank.

Applying the laws of physics to this evidence, the engineer, called by Doe as an expert witness, made alternative estimates of the speed of the car at the time it became airborne. In his opinion, it was traveling at a speed of 76 m.p.h., if it landed at the spot where it was found, or at a speed of 48 m.p.h., if it landed in the water near the floodplain and floated from there to the place it came to rest.

Doe, contending that the trial court erred "in refusing to set aside the jury's verdict as being based on incredible evidence", asks us to reverse the judgment and enter final judgment in his favor. He argues that the physical evidence shows that Thomas's testimony concerning his speed was incredible, that his violation of the speed limit constituted negligence as a matter of law, and that "it seems apparent that the verdict was a result of sympathy for the Plaintiff." Doe invokes the rule that "if the physical facts are such as to demonstrate that the oral evidence upon which the jury based its verdict is incredible, then the trial court and this court are not bound by the verdict of the jury." *Noland* v. *Fowler*, 179 Va. 19, 23, 18 S.E.2d 251, 253 (1942).

But the corollary to this rule is that "when physical facts are relied upon to overcome oral testimony they must be established by evidence so clearly preponderating that the existence of such facts is unmistakable." *Weddle, Administratrix* v. *Draper*, 204 Va. 319, 323, 130 S.E.2d 462, 466 (1963).

It may be that the physical evidence in this case would support an inference of speed greater than that Thomas estimated at trial. We cannot say as a matter of law, however, that the inference, though permissible, is unmistakable. The record shows that, after Thomas's car left the highway, it was traveling downgrade, on wet grass, and out of control. Evaluating the physical evidence, the expert witness suggested alternative inferences based upon alternative premises. Even if the physical evidence supports the expert's opinion that Thomas's speed was not less than 48 m.p.h., such negligence would not bar the plaintiff's right to recover unless his speed was a proximate cause of the accident. And the probative value of King's testimony must be assessed in light of the facts that the speed of his own car was only an approximation, the night was dark, and he was 300 feet behind the Thomas car at the time it started to pass Doe's vehicle.

We believe that the evidence, considered as a whole, raises a factual question as to Thomas's speed at the time he entered the curve. The evidence of speed was in conflict, the jury was fairly instructed on the law of primary negligence, contributory negligence, and proximate cause, and the jury chose to believe that Thomas was not guilty of negligence which proximately contributed to the accident. A "trial judge cannot substitute his conclusion for that of the jury merely because he would have voted for a different verdict if he had been on the jury." *Commonwealth* v. *McNeely*, 204 Va. 218, 222, 129 S.E.2d 687, 690 (1963). Nor can we.

Rejecting the defendant's prayer for final judgment in this Court, we turn to Doe's contention that the trial court committed reversible error "in allowing Linda Saunders to testify as to what [Thomas] told her at the hospital subsequent to the accident."

Doe lodged a hearsay objection when this testimony was given and assigned the adverse ruling as a ground for a new trial in argument on his motion to set aside the verdict. Since that motion was denied, we consider all the evidence pertinent to the question.

Linda Saunders, Thomas's sister, visited him in the hospital 18 hours after the accident. Mrs. Saunders testified that, when she

arrived, "[h]is eyes were closed". She explained that, when she called his name, "[h]e just looked at me and I said, 'Hey,' and he said, 'Hey,' and I said, 'Do you remember what happened, Randy?' He said, 'A car ran me out of the road,' and he closed his eyes." She characterized his condition as "groggy" and she remembered that "[h]e just come and went."*

Thomas testified at trial that he recalled his sister's visit, but he could not remember what he told her or anything else that happened until three days after the accident. "I was unconscious," he said, "but when you're unconscious, you come and you go like that." In a legal memorandum filed in opposition to Doe's motion to set aside the verdict, Thomas's counsel reminded the trial court that "the plaintiff . . . testified by deposition that the last thing he remembers was striking a pole at the scene of the accident. . . . The plaintiff was unconscious for three days except for brief intervals when he would 'wake up and fall back'."

▇ We must first decide whether Thomas's statement to his sister was admissible under the spontaneous-declaration (or excited-utterance) exception to the hearsay rule.

> [E]xcited utterances prompted by a startling event, and not the product of premeditation, reflection, or design, are admissible in evidence. The spontaneity of the utterance is deemed to guarantee its trustworthiness, even though it is hearsay evidence which would otherwise be excluded. The declaration must be made at such time and under such circumstances as to preclude the presumption that it is the result of deliberation.

*Nicholaou v. Harrington*, 217 Va. 618, 622, 231 S.E.2d 318, 321-22 (1977) (citations omitted).

▇ Although not controlling, the lapse of time between the "startling event" and a declaration offered in evidence is relevant to a determination whether the declaration was spontaneous and instinctive, or premeditated and deliberative. *McIlwain v. McIlwain*, 215 Va. 633, 636, 212 S.E.2d 284, 286 (1975). It is also

---

* On cross-examination, Mrs. Saunders acknowledged that she had completed the blanks on the standard accident report form and filed it for her brother. In the blank opposite the question, "Number of vehicles", she wrote "one". Asked why she did not "say anything about a second car", she explained that she "didn't have any information about what kind of car or who was driving or anything."

relevant to consider whether the declarant made an exclamation impulsively on his own initiative, or a statement in response to a question. *See Bosin* v. *Oak Lodge Sanitary District No. 1*, 251 Or. 554, 564, 447 P.2d 285, 290 (1968). And a further factor in the trustworthiness equation is whether the statement was an admission against interest or a self-serving declaration. *See Zeller* v. *Dahl*, 262 Or. 515, 519, 499 P.2d 1316, 1318 (1972). The ultimate test is whether it appears that "the facts [were] talking through the party or . . . the party [was] talking about the facts." *Upton* v. *Commonwealth*, 172 Va. 654, 659, 2 S.E.2d 337, 339 (1939); *cf. Simpson* v. *Commonwealth*, 227 Va. 557, 564-65, 318 S.E.2d 386, 391 (1984).

■ A party who relies upon an exception to an exclusionary rule of evidence bears the burden of establishing admissibility. "One seeking to have hearsay declarations of a witness admitted as an exception to the general rule must clearly show that they are within the exception." *Skillern and Sons, Inc.* v. *Rosen*, 359 S.W.2d 298, 301 (Tex. 1962); *accord Marshall* v. *Thomason*, 241 S.C. 84, 89, 127 S.E.2d 177, 179 (1962). Virtually all courts recognize this principle as applied to the spontaneous-declaration exception. *See generally, Annot.*, 53 A.L.R.2d 1245, 1260 (1957).

■ The record conclusively shows that the hearsay statement was elicited by a question posed by the declarant's sister, was in the declarant's self-interest, and was made 18 hours after the event to which it was addressed. Nevertheless, the plaintiff maintains that the evidence supports a finding that he was unconscious for a period of three days following the accident and, thus, had no opportunity to fabricate a self-exculpatory explanation of the event. Hence, he argues that his declaration was wholly spontaneous and trustworthy.

This argument might have some merit if the premise upon which it rests were sound. *Upton* v. *Commonwealth*, 172 Va. at 657, 2 S.E.2d at 339. But Thomas's own testimony that he would "come and go", corroborated by his sister's observation that he "come and went", effectively rebuts any theory that he remained in an insensible coma from the time he was rescued from the top of his submerged vehicle until Mrs. Saunders spoke to him in the hospital.

■ Considering the evidence as a whole, we are of opinion that the plaintiff failed to establish that the hearsay declaration was "made at such time and under such circumstances as to preclude

the presumption that it [was] the result of deliberation", *Nicholaou* v. *Harrington*, 217 Va. at 622, 231 S.E.2d at 322, and that the trial court erred in admitting it into evidence.

■ Nor can we say that the error was harmless. Proof that John Doe was guilty of an act of negligence which was the sole proximate cause of the accident was the *sine qua non* of Thomas's right to recover. Except for the hearsay declaration, the only proof of that act was Thomas's own testimony. "[W]e cannot say as a matter of law that the inadmissible evidence did not affect the jury verdict." *Id.* at 623, 231 S.E.2d at 322. *See also Transit Company* v. *Brickhouse, Adm'r.*, 200 Va. 844, 108 S.E.2d 385 (1959).

Accordingly, we will reverse the judgment and remand the case for a new trial.

*Reversed and remanded.*