COURT OF APPEALS OF VIRGINIA


Present:  Judges Humphreys, Agee and Kelsey
Argued by teleconference


JODY DANIEL GENT

                                            MEMORANDUM OPINION* BY
v.    Record No. 0429-02-3               JUDGE ROBERT J. HUMPHREYS
                                               FEBRUARY 11, 2003
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF WISE COUNTY
                       J. Robert Stump, Judge

          Anthony E. Collins (Collins & Collins, on
          brief), for appellant.

          Virginia B. Theisen, Assistant Attorney
          General (Jerry W. Kilgore, Attorney General,
          on brief), for appellee.


     Jody Daniel Gent appeals his conviction, after a jury trial,

for three counts of robbery, three counts of breaking and

entering, felony murder, and solicitation to commit a felony.

Gent argues the trial court erred in admitting into evidence two

statements uttered by the victim, and in excluding other

statements uttered by the victim.  For the reasons that follow, we

affirm the judgment of the trial court.

─────────────────

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.  Further, because this opinion has
no precedential value, we recite only those facts essential to
our holding.

We first note we have long recognized that the admissibility of evidence is within the broad discretion of the trial court, and such a ruling will not be disturbed on appeal in the absence of an abuse of discretion.  Sabo v. Commonwealth, 38 Va. App. 63, 79, 561 S.E.2d 761, 769 (2002).  Furthermore, "[a] party who relies upon an exception to an exclusionary rule of evidence bears the burden of establishing admissibility.  'One seeking to have hearsay declarations of a witness admitted as an exception to the general rule must clearly show that they are within the exception.'"  Doe v. Thomas, 227 Va. 466, 472, 318 S.E.2d 382, 386 (1984) (quoting Skillern and Sons, Inc. v. Rosen, 359 S.W.2d 298, 301 (Tex. 1962)).

On appeal, Gent contends the trial court erred in admitting statements made by the victim, Myrtle Petit, to her neighbor, Betty Mullins, on October 1, 1997 and November 29, 1997.[1]

---

[1] The Commonwealth contends that Gent waived any error concerning the testimony as to the October 1, 1997 statement because he introduced evidence of the same character on his own behalf when cross-examining Deputy Ronnie Large.  Saunders v. Commonwealth, 211 Va. 399, 401, 177 S.E.2d 637, 638 (1970) ("[W]here an accused unsuccessfully objects to evidence which he considers improper and then on his own behalf introduces evidence of the same character, he thereby waives his objection, and we cannot reverse for the alleged error.").  However, we do not think that the rule applies here.  Deputy Large did testify to statements made to him by Petit concerning some of the same facts contained in Mullins' testimony to which Gent objected.  The record demonstrates, however, that Deputy Large volunteered this information on cross-examination and that it was not intentionally solicited by Gent.  See Washington-Va. Ry. Co. v. Deahl, 126 Va. 141, 151, 100 S.E. 840, 844 (1919) ("The general rule here invoked is well settled, but in order to be applicable

-

Specifically, Gent argues the trial court erred in finding the statements were admissible pursuant to the hearsay exception permitting testimony relating excited utterances.  We disagree.

During Gent's trial, Mullins testified that on October 1, 1997, Petit appeared at her door during the early morning hours.  Petit held her hand to her face, "like she didn't want anybody to see and she was acting real nervous."  Mullins then asked Petit to take her to Petit's home.  When they arrived, Petit began crying and was "very upset."  She then moved her hand, and Mullins could see that the side of her face was bruised.  Mullins asked Petit what had happened.  Petit told her that "somewhere in the middle of the night somebody had broke in her house and robbed her" and that they knocked her down, choked her, and hit her in the face.  Mullins asked Petit "how much . . . what they got," and Petit stated that the man had stolen $1,300 from her chest of drawers.  Mullins then contacted the police.

Mullins further testified that, at approximately 2:00 a.m., on November 29, 1997, Petit knocked on her door again.  Mullins observed that Petit was crying and upset.  Mullins asked Petit what had happened and Petit told her she had been robbed again.  Petit and Mullins immediately returned to Petit's home.  Petit remained upset and took Mullins into her bedroom.  She told

there must be some reasonable and just foundation for holding that there was in fact a waiver.  An application of the rule in this case would be a distortion of its purpose and a sacrifice of the principle upon which it rests.").

-

Mullins "this time he had a pipe," and "he said he would kill [me] if [I] did not give him the money." Petit stated that the man was wearing "an orange jumpsuit and a black ski mask" and that she had waited ten minutes after the robber had left before walking to Mullins' home. Mullins then called the police once again.

Petit died before trial, and the Commonwealth offered her statements recited above through Mullins. The trial court admitted the statements under the "excited utterance" exception to the hearsay rule.

> A statement comes within the excited utterance exception to the hearsay rule and is admissible to prove the truth of the matter stated, when the statement is spontaneous and impulsive, thus guaranteeing its reliability. "There is no fixed rule by which the question whether the statement is admissible as an excited utterance can be decided. Resolution of the issue depends upon the circumstances of each case."
>
> The statement must be prompted by a startling event and be made at such time and under such circumstances as to preclude the presumption that it was made as the result of deliberation. In addition, the declarant must have firsthand knowledge of the startling event. The decision whether the statement qualifies as an excited utterance lies within the discretion of the trial court.

Goins v. Commonwealth, 251 Va. 442, 460, 470 S.E.2d 114, 126 (1996) (quoting Clark v. Commonwealth, 235 Va. 287, 292, 367 S.E.2d 483, 485 (1988)) (other citations omitted).

"[T]he [']startling event['] does not have to be the actual crime itself, but rather may be a related occurrence that causes

-

such a reaction." Esser v. Commonwealth, 38 Va. App. 520, 526,

566 S.E.2d 876, 879 (2002). Further,

> [a]lthough not controlling, the lapse of
> time between the "startling event" and a
> declaration offered in evidence is relevant
> to a determination whether the declaration
> was spontaneous and instinctive, or
> premeditated and deliberative. It is also
> relevant to consider whether the declarant
> made an exclamation impulsively on his own
> initiative, or a statement in response to a
> question.

Doe, 227 Va. at 471-72, 318 S.E.2d at 385 (citations omitted).

"The ultimate test is whether it appears that 'the facts [were]

talking through the party or . . . the party [was] talking about

the facts.'" Id. at 472, 318 S.E.2d at 385 (quoting Upton v.

Commonwealth, 172 Va. 654, 659, 2 S.E.2d 337, 339 (1939)).

However,

> [t]his often quoted phrase may capture the
> spirit of the exception but is not
> particularly helpful to the resolution of
> specific cases since the issue always
> involves the admission of a party's
> statement about what happened. Facts do not
> speak statements admissible in court, only
> people do, and they may speak truthfully for
> a variety of reasons. The issue is whether
> a person's statement about the facts is the
> product of a startling event such that it
> excludes the possibility that it is a
> fabrication.

Martin v. Commonwealth, 4 Va. App. 438, 441, 358 S.E.2d 415, 417

(1987) (citation omitted).

Here, the evidence established that Petit made the statements

to Mullins, on both occasions, within minutes after the robbery or

-

within minutes after the "startling event" of returning to her home, where the robberies had occurred.  Further, Petit was visibly upset and shaken on both occasions and, with the exception of Mullins' testimony that Petit told her $1,300 was taken from her dresser in response to specific questioning from Mullins, no evidence in the record demonstrates that Petit's statements were merely a "narrative of a past" event.  Portsmouth Transit Company v. Brickhouse, Adm'r, 200 Va. 844, 848, 108 S.E.2d 385, 387 (1959).  Instead, as testified to by Mullins, the statements appear to have been made as a stream of consciousness flowing from Petit after being asked what had happened to cause her to be upset and/or after returning to her home, where the robberies had recently occurred.  Accordingly, on this record, we cannot find that the trial court abused its discretion, as it appears that Petit indeed made the statements impulsively and without deliberation and that she did so without prompting or suggestion from Mullins.  See Martin, 4 Va. App. at 442, 358 S.E.2d at 418 ("The natural reaction of any person arriving to aid one exposed to a startling event is to inquire, 'What happened?' . . . If the question or questioner suggested or influenced the response, then the declaration may lack the necessary reliability to be admitted.").[2]

---

[2] Because we find no error in the trial court's admission of the statements, we do not address the Commonwealth's argument pertaining to harmless error.

-

Gent next contends that the trial court erred in excluding statements made by Petit to her cousin, Marvin Craiger, and her niece, Nancy Petit, just after she was released from the hospital. Gent argues that the statements, concerning the identity of the robber, fall within the dying declaration exception to the hearsay rule and/or that they should be admitted because the "inherent unreliability of hearsay is not present." Gent also contends the evidence is exculpatory and, thus, its exclusion deprived him of his constitutional right to present evidence in his own defense. We once again disagree, and affirm the trial court's ruling.

We do not address Gent's contentions with regard to the dying declaration exception to the hearsay rule and the exculpatory nature of the evidence, as Gent failed to raise these issues before the trial court at the time the evidence was offered and the court made its ruling. Thus, Gent failed to properly preserve the issues for purposes of appeal. See Rule 5A:18; see also Sabol v. Commonwealth, 37 Va. App. 9, 20, 553 S.E.2d 533, 538 (2001) ("To preserve an issue for appeal, appellant must make a contemporaneous objection to the court's ruling."); Harward v. Commonwealth, 5 Va. App. 468, 473, 364 S.E.2d 511, 513 (1988) (holding an objection made as to the admissibility of evidence is timely only if raised when the questioned statement is made); Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998).

-

Further, we decline Gent's invitation to adopt a "catch-all" exception to the hearsay rule. Here, outside the presence of the jury, Craiger testified that after Petit arrived at Nancy's home, after being released from the hospital, he asked Petit if she knew "who done this to you, I said was it Jody Gent?" Craiger stated she "shook her head like this," indicating "no," "dropped her head," and mumbled that "it was a little boy," as she put her hand out to the side, indicating "two to three feet." Nancy Petit stated that Craiger "asked [Petit] if she remembered him and she said 'well I reckon I do.'" Craiger asked, "who did this to you?" "Was it Jody Gent?" Nancy Petit stated that Petit "bowed her head and shook it no" and mumbled that it was a "little guy."

Gent contends that this Court should recognize a "residual hearsay exception," like that found in the Federal Rules of Evidence and, thus, find that the trial court erred in refusing to permit this evidence based upon the Commonwealth's hearsay objection. See Fed. R. Evid. 807.[3] However, we find that the

_____

[3] Federal Rule of Evidence 807 provides as follows:

> A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice

-

trial court here properly refused to apply federal law to a purely state prosecution.  See Chandler v. Commonwealth, 249 Va. 270, 279, 455 S.E.2d 219, 225 (1995).

In Virginia, we have not adopted the federal rules of evidence, nor have we chosen to codify our rules of evidence. Hanson v. Commonwealth, 14 Va. App. 173, 185, 416 S.E.2d 14, 21 (1992).  We have however, recognized what might be referred to as an ad hoc form of the residual hearsay exception, by permitting the admission of certain evidence possessing a very high indicia of reliability, such as a date on a postmark, or a dollar figure on a price tag.  See id. ("[A]lthough a postmark is within the traditional definition of hearsay, it is admissible as an exception to the hearsay rule when used to prove the date on which the postal service affixed its postmark in the regular course of business."); see also Robinson v. Commonwealth, 258 Va. 3, 10, 516 S.E.2d 475, 479 (1999) (creating an exception to the hearsay rule in shoplifting cases permitting the admission into evidence of

---

will best be served by admission of the statement into evidence.  However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

-

price tags regularly affixed to items of personalty offered for sale).  Nevertheless, we have not chosen to recognize an exception to the hearsay rule that would permit the admission of any and all "relevant" statements, which may carry some indicia of reliability.  Instead, we have created only limited exceptions in cases where the circumstances prove that "'the inherent unreliability of hearsay is not present.'"  Id. (quoting State v. White, 437 A.2d 145, 148 (Conn. Super. Ct. 1981)).  Such is not the case here, and we decline to extend these limited exceptions beyond their intended reach.  Thus, we find no abuse of discretion on the part of the trial court in refusing to admit Craiger and Nancy Petit's testimony concerning their conversation with Petit about the identity of the robber.

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

-