# COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:    Judges Beales, Huff and Chaney
Argued by videoconference


SOLOMON JEROME MILLER

MEMORANDUM OPINION[*] BY

v.        Record No. 1067-22-1                JUDGE GLEN A. HUFF
                                              SEPTEMBER 5, 2023

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Mary Jane Hall, Judge

J. Barry McCracken, Assistant Public Defender, for appellant.

Matthew J. Beyrau, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Solomon Jerome Miller ("appellant") appeals his conviction from the City of Norfolk

Circuit Court (the "trial court") for possession of a firearm by a convicted violent felon.  He

contends the trial court erred in accepting, for the truth of the matter asserted, an extract of

preliminary hearing witness testimony consisting of inadmissible hearsay.  He also asserts the

Commonwealth's evidence was insufficient to prove an essential element of the charged offense:

that he had actual or constructive possession of a firearm.  For the following reasons, this Court

reverses appellant's conviction and remands the case for further proceedings consistent with this

opinion.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND[1]

On the evening of April 11, 2020, Officer Kyle Barnes of the Norfolk Police Department received a "call for service for a gunshot victim" at 800 East Princess Anne Road, a "mostly empty parking lot." When Officer Barnes arrived at approximately 8:19 p.m., he saw appellant lying on the ground next to a black sedan with gunshot wounds to his chest and the lower left side of his body.[2] Officer Barnes also discovered the body of the deceased, Alonzo Rone ("Rone"), in the driver's seat of the black sedan with gunshot wounds to his chest and head. Although Officer Barnes saw three or four shell casings on the passenger side floorboard of the black sedan and additional shell casings on the ground near appellant, he did not find any firearms at the scene. And despite collecting multiple cartridge cases from the ground, Officer Logan Meyer, assigned to the forensics unit of the Norfolk Police Department, did not find any firearms either.[3]

---

[1] This Court must view "the evidence in the light most favorable to the Commonwealth," which includes "discard[ing] all evidence of the accused that conflicts with that of the Commonwealth and regard[ing] as true all credible evidence favorable to the Commonwealth and all fair inferences reasonably" drawn from that evidence. *Kelley v. Commonwealth*, 69 Va. App. 617, 624 (2019) (quoting *Parham v. Commonwealth*, 64 Va. App. 560, 565 (2015)).

[2] At trial, Officer Barnes referred to appellant by name but testified he would not be able to recognize appellant if he saw him again.

[3] Officer Meyer collected three "Hornady nine-millimeter Luger cartridge case[s]" and a "Speer nine-millimeter Luger cartridge case" from the ground near the black sedan, and also logged five other cartridge cases found in another area of the parking lot. Forensic Detective Steven Sweder subsequently discovered ten additional casings inside the black sedan during his examination of the car on April 13, 2020.

Appellant's bench trial began on June 22, 2022, for the sole charge of possessing a firearm in violation of Code § 18.2-308.2(A).[4] The Commonwealth introduced testimony from the police officers involved in the case as well as from Gabriel Weaver ("Weaver"), a witness to and victim of the April 11, 2020 shooting. Weaver had previously testified on behalf of the Commonwealth at appellant's preliminary hearing on February 11, 2021.

Weaver testified at trial that on the day of the shooting, at approximately 8:14 p.m., he had been sitting in the front passenger seat of the black sedan next to Rone and had seen appellant walking in the parking lot. Weaver referred to appellant by name and identified him in court on the record. When asked if he saw appellant "with anything in his hand," Weaver stated he did not remember. The Commonwealth then asked whether he saw "anyone on the scene with a gun," and Weaver stated that he saw "somebody, but it was dark outside." He further testified that he could not identify the person who shot him and Rone because he was sitting in the passenger seat while the shooter was standing "outside the driver's side" of the car. Unlike Rone, Weaver was able to escape the scene and later received treatment from the police for his wounds.

In response to the Commonwealth's next question about appellant's presence during the shooting, Weaver responded: "I seen him earlier, but I'm not sure, like, if he was the person with the gun or not. I just don't remember." At that point, the Commonwealth asked Weaver whether he remembered testifying about this matter at the preliminary hearing on February 11, 2021. Appellant objected to the Commonwealth's attempt to impeach its own witness.

---

[4] A grand jury indicted appellant on March 3, 2021, for several charges, including second-degree murder, malicious wounding, use of a firearm in the commission of a felony, and possession of a firearm by a convicted violent felon. Prior to appellant's trial, the Commonwealth nolle prosequied all charges except the single count of firearm possession by a convicted violent felon, in violation of Code § 18.2-308.2(A).

After a brief recess, the trial court granted the Commonwealth's request for permission to treat Weaver "as a hostile or adverse witness" for impeachment purposes. It reasoned that "the authority is ample to permit the Court to determine that Mr. Weaver has become an adverse witness" because his testimony surprised the Commonwealth.[5] In response to that ruling, appellant noted his objection to the use of Weaver's prior testimony "coming in for the truth of the matter asserted [because] [i]t can only come in as impeachment [material]." The trial court agreed that the former testimony could be used only to assess Weaver's credibility but not "as [substantive] evidence for the Court to consider."

The trial court then asked whether both parties agreed to "the import to be given to the prior inconsistent statement," to which the Commonwealth responded:

> I think that's going to determine or be determined about how it comes out on Mr. Weaver's testimony. For example, if the Commonwealth is able to elicit testimony that he was telling the truth and in effect refresh his memory about his testimony at the time of the preliminary hearing . . . [that] would be a very different situation [than] if he continues to deny it.

The trial court agreed, noting that the purpose for which the prior testimony would be admitted depended upon Weaver's trial testimony regarding his former statements.

Weaver returned to the witness stand, and the Commonwealth repeated its question as to whether he remembered "testifying at the preliminary hearing back on February 11[,] 2021." He said yes. The Commonwealth then handed Weaver a copy of the transcript from that hearing and

---

[5] Generally, "the credibility of a witness may be impeached by any party *other than* the one calling the witness." Va. R. Evid. 2:607(a) (emphasis added). If, however, the trial court deems the witness "adverse," the party producing the witness may seek to impeach the witness with proof of a prior statement inconsistent with his trial testimony. *See* Va. R. Evid. 2:607(c)(i); Code § 8.01-403; *Ragland v. Commonwealth*, 16 Va. App. 913, 920 (1993) ("Code § 8.01-403, applicable in criminal as well as civil cases, allows impeachment of a party's witness with prior inconsistent statements after that witness has been found by the trial court to be adverse."). Appellant does not challenge on appeal the trial court's factual finding that Weaver's alleged inability to recall certain facts at trial rendered him an "adverse" witness.

directed him to silently read a few specific lines of his testimony, after which it asked whether he recalled "giving that testimony during the preliminary hearing." Weaver again answered yes and stated that, as far as he could remember, he had testified truthfully. He also answered in the affirmative to the Commonwealth's following questions: "After reviewing your testimony from the preliminary hearing, does that refresh your recollection of what your testimony was then?" and "[D]o you recall testifying that [appellant] had the gun out and was pointing it at you?"

Yet, when the Commonwealth then asked whether the events Weaver had previously described were "what happened to the best of your recollection," Weaver stated that he didn't remember. In an attempt to clarify the situation, the Commonwealth explicitly asked Weaver: "You're saying you don't remember what happened, or you don't remember the preliminary hearing?" Weaver stated he did not remember what happened the day of the shooting but did remember testifying at the preliminary hearing. At that point, the Commonwealth sought to enter into evidence the limited portion of the transcript it had asked Weaver to read, namely his statement that appellant "had a gun out, just pointing it. . . . [He] had a gun pointing at us."

Appellant objected on the ground that the Commonwealth was "conflating refreshing recollection and impeachment and trying to basically do both at once." Without directly addressing those arguments or stating under which exception it was admitting the evidence, the trial court overruled appellant's objection. In doing so, it stated that the excerpt from the transcript would be admitted as Commonwealth's Exhibit 8 because Weaver "said he doesn't remember today, and he told the truth then and he did apparently remember then."[6]

---

[6] As entered into evidence, Exhibit 8 consisted only of the specific portion of Weaver's testimony the Commonwealth had instructed him to review at trial. The remainder of the transcript was fully removed, including all identifying information about the witness and the hearing itself.

During subsequent cross-examination, when asked by defense counsel whether he remembered "ever seeing [appellant] with a gun," Weaver reiterated that he did not remember "if I saw him or not with the gun." At the end of the Commonwealth's case-in-chief, appellant moved to strike the single charge of firearm possession by a convicted violent felon on the basis that the evidence of possession was insufficient.[7] As part of that argument, appellant reiterated that "the only piece of direct evidence that's come in over defense objection is a transcript page from February of 2021 of prior testimony of Mr. Weaver[,] . . . [which] originally came in as part of impeachment, but was presented as a recollection of his memory." He claimed that evidence was insufficient based on Weaver's credibility issues, which the Commonwealth had highlighted by impeaching its own witness.[8]

The trial court denied appellant's motion to strike without addressing its rationale for admitting Exhibit 8, and the parties immediately delivered their closing statements.[9] After acknowledging that the case was "largely circumstantial," the trial court ultimately found the evidence "sufficient" to convict appellant "based upon, of course, the testimony of Mr. Weaver[,] . . . who didn't put anybody else in the parking lot and who saw a gun in

---

[7] Appellant also argued that the evidence was insufficient to prove the functionality of the firearm appellant allegedly possessed because the police never recovered any gun from the scene. Appellant does not raise that argument on appeal.

[8] On the issue of Weaver's credibility, appellant alleged that "the Commonwealth is in one breath impeaching him and saying he's essentially lying on the stand[,]" "but yet in the same breath, they are asking essentially their whole case to rest on this one sentence that he said over basically a year[-]and-a-half ago also under oath and also in court."

[9] Appellant introduced no evidence of his own. He then renewed his motion to strike on the same grounds and incorporated those arguments into his closing statement.

[appellant]'s hand." The trial court sentenced appellant to five years' incarceration.[10] This appeal followed.

ANALYSIS

Appellant raises two assignments of error on appeal. First, that the trial court erred in admitting a portion of witness testimony from the preliminary hearing for the truth of the matter asserted. Second, that the trial court erred in denying appellant's motions to strike because the evidence was insufficient to prove he possessed a firearm.

I. Admission of Preliminary Hearing Testimony

The crux of appellant's first argument is that the trial court erred in admitting and considering Exhibit 8—the extract of Weaver's testimony from the preliminary hearing transcript—for the truth of the matter asserted therein because it was inadmissible hearsay. This Court agrees, finding that the trial court abused its discretion in accepting Exhibit 8 as substantive evidence where the hearsay exceptions the Commonwealth raised at trial do not permit that result and the trial court did not adhere to the procedures required for the admission of Weaver's former testimony under Virginia Rule of Evidence 2:804(b)(1). This Court further agrees with appellant's contention that the trial court's error "was not harmless since it was an indispensable part of the Commonwealth's proof of the commission of the alleged offense."

"Decisions regarding the admissibility of evidence 'lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion.'" *Blankenship v. Commonwealth*, 69 Va. App. 692, 697 (2019) (quoting *Michels v. Commonwealth*, 47 Va. App.

---

[10] Included in Code § 18.2-308.2(A) is the provision that "any person who violates this section by knowingly and intentionally possessing or transporting any firearm and who was previously convicted of a violent felony as defined in [Code] § 17.1-805 shall be sentenced to a mandatory minimum term of imprisonment of five years." At the start of appellant's trial, the Commonwealth admitted a copy of appellant's prior sentencing order for a 2016 robbery conviction, in violation of Code § 18.2-58, which constitutes a violent felony offense under Code § 17.1-805(C).

461, 465 (2006)).  A trial court abuses its discretion by failing to consider a significant relevant factor, giving significant weight to an irrelevant or improper factor, committing a clear error of judgment in assigning weight to proper factors, or making a mistake of law.  *Commonwealth v. Thomas*, 73 Va. App. 121, 127 (2021); *Lawlor v. Commonwealth*, 285 Va. 187, 213 (2013).  As relevant here, "[s]uch an error may occur when the court . . . fails to fulfill a condition precedent that the law requires."  *Lawlor*, 285 Va. at 213; *see also Turner v. Commonwealth*, 284 Va. 198, 208 (2012) (finding the trial court abused its discretion in ruling a witness unavailable for lack of memory when it failed to inquire into the genuineness of that claim).

At issue in this case are the rules governing the admissibility of hearsay evidence. "Hearsay" refers to "an out-of-court statement offered to prove the truth of the matter asserted." *Robinson v. Commonwealth*, 258 Va. 3, 6 (1999).  Because the admission of such statements is generally prohibited, the "party seeking to have a hearsay declaration admitted at trial" bears the burden of "'clearly show[ing]' that the evidence falls within an exception to the hearsay rule." *Swanson v. Commonwealth*, 56 Va. App. 147, 156 (2010) (quoting *Doe v. Thomas*, 227 Va. 466, 472 (1984)).

Rule of Evidence 2:801(d) provides that a witness's hearsay statements may be admissible "under any hearsay exception provided in Rules 2:803 or 2:804."  Based on the specific facts of this case, Rule 2:804(b)(1)'s "former testimony" exception is the only avenue by which the trial court could have properly considered Weaver's statements from the preliminary hearing for their truth.  Although the Commonwealth does not dispute that conclusion on appeal, it did not seek to introduce Exhibit 8 *at trial* pursuant to the "former testimony" exception.

Rather, the Commonwealth only argued for the use of Exhibit 8 to either refresh Weaver's memory or impeach his credibility.[11]

Neither of those rationales, however, permits the admission and use of Exhibit 8 as substantive evidence.[12] Nevertheless, the Commonwealth offered Exhibit 8 for that prohibited purpose, relying on the truth of Weaver's prior testimony to prove appellant's guilt.[13] Likewise,

---

[11] Rule 2:801(d) permits the admission of a witness's prior statement "for impeachment of the witness's credibility," if the prior statement "is inconsistent" with the witness's current testimony and is "offered in compliance with Rule 2:613." Va. R. Evid. 2:801(d)(1). Here, as a party impeaching its own "adverse" witness, the Commonwealth was bound by the limitations in Rules of Evidence 2:607(c)(i) and 2:613(a). On the other hand, "[t]he act of refreshing a witness's recollection does not involve contradicting that witness's testimony." *Ruhlin v. Samaan*, 282 Va. 371, 379 (2011). "Rather, 'when a witness has a memory lapse on the stand['] . . . a party may attempt to 'refresh' the witness's memory by having the witness examine materials relating to the matter for which they are testifying." *Id.* (quoting *McGann v. Commonwealth*, 15 Va. App. 448, 451-52 (1992)). Only if the witness's review of those materials restores his independent memory can he then "speak to the facts from his own recollection." *Id.* (quoting *Harrison v. Middleton*, 52 Va. (11 Gratt.) 527, 544 (1854)). Here, even after reviewing the transcript of his preliminary hearing testimony, Weaver consistently averred that he could not remember whether he saw a gun in appellant's hand on April 11, 2020.

[12] Regarding impeachment, Weaver's preliminary hearing testimony could only be considered in the context of assessing his credibility rather than for its truth. *See* Va. R. Evid. 2:804(d); Code § 8.01-403; *Roberts v. Commonwealth*, 230 Va. 264, 269 (1985) (holding the trial court properly instructed the jury that the witness's "prior statements were not substantive evidence and could not be considered on the question of the defendant's guilt or innocence but solely for the purpose of affecting his credibility" where the Commonwealth used the witness's prior preliminary hearing testimony only "in an effort to impeach" the witness); *Stoots v. Commonwealth*, 192 Va. 857, 866 (1951) ("[P]rior inconsistent statements are, of course, not substantive evidence. They are admissible only for the purpose of contradiction and the court must so instruct the jury if requested.").
Conversely, any material used to refresh a witness's recollection is itself inadmissible, unless entered on other grounds, and the witness may not merely read aloud from the provided material. *See Potts v. Commonwealth*, 12 Va. App. 1093, 1095 (1991) ("'Refreshed' testimony is admissible [only] if it shows the witness'[s] memory was in fact refreshed and that he or she was then testifying from his or her independent recollection of the events.").

[13] *See Swain v. Commonwealth*, 28 Va. App. 555, 559 (1998) ("Determining whether a statement is offered to prove the truth or falsity of the matter asserted requires an analysis of the purpose for which the statement is offered into evidence."); *Davis v. Commonwealth*, 73 Va. App. 500, 509 (2021) ("[T]he actual use at trial by the proponent is a relevant consideration when determining the purpose for which an out-of-court statement is offered.").

the trial court accepted and relied on Weaver's prior statements in Exhibit 8 as substantive evidence despite having previously acknowledged that such testimony introduced during a successful impeachment could be used only to assess the witness's credibility.

Based on the trial court's contradictory statements and the ambiguity of its reasoning, appellant now theorizes that it erroneously admitted Exhibit 8 pursuant to the so-called "past recollection recorded" exception in Rule of Evidence 2:803(5), which is often confused with the rules for refreshing a witness's recollection. *See James v. Commonwealth*, 8 Va. App. 98, 103-04 (1989) (discussing the differences between hearsay exceptions relying on extrinsic materials).[14] But even if this Court could conclude from the record that the trial court applied one of those two theories, neither justified the use of Exhibit 8 as substantive evidence against appellant.[15] And the Commonwealth does not argue otherwise on appeal, acknowledging that

---

[14] In contrast to the procedure for refreshing a witness's recollection, "[t]he general rule of past recollection recorded allows . . . a witness with no independent recollection of an incident to testify directly from notes or reports if certain requirements are met." *James*, 8 Va. App. at 102. A qualifying record "may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party." Va. R. Evid. 2:803(5). In the case at hand, the Commonwealth could arguably constitute "an adverse party" under Rule 2:803(5) based on the trial court's designation of Weaver as an "adverse" witness for impeachment pursuant to Code § 8.01-403. However, this Court declines to make a finding on this particular issue given that the parties have not briefed it and Exhibit 8 does not the meet the other required criteria for admission as a qualifying record under Rule 2:803(5).

[15] Although hearsay evidence properly admitted under Rule 2:803(5) as a past recollection recorded may be considered for the truth of the matter, that exception applies only to

> a memorandum or record concerning a matter about which a witness once had firsthand knowledge made or adopted by the witness *at or near the time of the event* and while the witness had a clear and accurate memory of it, if the witness lacks a present recollection of the event, and the witness vouches for the accuracy of the written memorandum.

Va. R. Evid. 2:803(5) (emphasis added); *see also James*, 8 Va. App. at 104-05. The record in this case establishes that Exhibit 8 does not meet the requirements to qualify for admission as a "recorded recollection" under this exception. Nor may Exhibit 8 be admitted in connection with the Commonwealth's attempt to refresh Weaver's memory. *See supra* notes 11-12.

Exhibit 8 could only be admitted for its truth pursuant to the "former testimony" exception in Rule 2:804(b)(1).

    *A. Exhibit 8 Not Properly Admitted Pursuant to "Former Testimony" Exception*

The Commonwealth goes a step further, however, and contends that the trial court properly admitted Exhibit 8 under the "former testimony" exception even though the trial court "did not specifically articulate that it was admitting the transcript under this hearsay exception" and the Commonwealth never advocated for admission under Rule 2:804(b)(1) at trial.

For the former-testimony exception to apply, the trial court must make an initial finding that the declarant of the offered statement is either "dead or otherwise unavailable as a witness." Va. R. Evid. 2:804(a).[16] "Although the focus of the [unavailability] inquiry is often directed to the absence of a witness, the analysis also applies to circumstances when the witness is present, but for sufficient reasons the witness's testimony is 'unavailable.'" *Sapp v. Commonwealth*, 263 Va. 415, 424 (2002); *see also Turner*, 284 Va. at 207 (acknowledging a witness's "lack of memory at trial is the functional equivalent of the unavailability of the witness himself").

According to the Commonwealth, Weaver's inability at trial to recall whether he saw appellant holding a gun on April 11, 2020, rendered him "unavailable" for purposes of Rule 2:804(b)(1).[17] This argument overlooks the fact that where such "unavailability" is based on a

---

[16] This Court notes that the declarant's "unavailability" is a necessary but not sufficient condition to admitting a witness's prior testimony pursuant to Rule 2:804(b)(1). *See Sapp v. Commonwealth*, 263 Va. 415, 427 (2002) ("Upon . . . demonstrated bona fide lack of memory, the testimony of a witness may be declared unavailable and prior testimony may be admitted, provided that the additional evidentiary foundations [of Rule 2:804(b)(1)], not at issue in this case, are met."); *Roberts*, 230 Va. at 269 ("Had the Commonwealth then sought to introduce the transcript into evidence to show that [the witness] had answered as claimed, the burden would have been on the prosecution to prove the transcript was accurate."). Neither party nor the trial court addressed whether the other requirements in Rule 2:804(b)(1) were proven in appellant's case, and they are not the subject of this appeal.

[17] "In such cases, the focus of the inquiry is not the unavailability of the witness but the unavailability of the testimony." *Jones v. Commonwealth*, 22 Va. App. 46, 52 (1996).

claim of memory loss (rather than the witness's physical absence), trial courts must also comply

with the "limiting principles" established by the Supreme Court "to ensure that the witness is not

merely attempting to avoid his duty to testify." *Turner*, 284 Va. at 207; *see also Sapp*, 263 Va. at

424.[18]  Simply put, the trial court cannot declare a witness claiming memory loss to be

"unavailable" for purposes of Rule 2:804 without first "conducting an inquiry and observing the

demeanor of the witness as it does so" as to "satisfy itself that the loss of memory is genuine."

*Turner*, 284 Va. at 208; *see also Sapp*, 263 Va. at 427 ("[T]he bona fides of a claim of loss of

memory *must* be tested[] . . . [before] the testimony of a witness may be declared unavailable and

prior testimony may be admitted . . . .").

This factfinding process is a non-negotiable prerequisite to the admission of a witness's

prior testimony under Rule 2:804(b)(1).  *See Turner*, 284 Va. at 208 ("In the absence of such an

inquiry, the [trial] court had no basis for determining the authenticity of the claim, which is 'a

relevant factor that should have been given significant weight' in determining whether [the

witness] was unavailable." (quoting *Landrum v. Chippenham & Johnston-Willis Hosps., Inc.*,

282 Va. 346, 352 (2011))).[19]  The questioning of the witness by either party is no substitute for

the trial court's duty to directly test the witness's claim.  *See id.* ("[T]he court has an obligation

---

[18] The trial court's duty to evaluate "whether memory loss is real or feigned is crucial because it determines how the court should proceed with the witness." *Turner*, 284 Va. at 208 n.1.  For example, because "feigned loss of memory is nothing more than a refusal to testify," such refusal "'should be met with an order . . . directing the witness to testify.'" *Id.* (alteration in original) (quoting *Sapp*, 263 Va. at 425).

[19] Although a trial court is not required to state every factual finding relevant to an evidentiary decision, a failure to do so may prevent an appellate court from affirming that judgment on alternate grounds where, as here, the record lacks crucial factual findings. *Shannon v. Commonwealth*, 289 Va. 203, 206 (2015); *see also Rabeiro v. Commonwealth*, 10 Va. App. 61, 64 (1990) (explaining "[t]he factual determinations which are necessary predicates to rulings on the admissibility of evidence and the purposes for which it is admitted" fall within the exclusive purview of the trial court).

to explore the claim reasonably to ensure that the witness has not feigned his loss of memory in an attempt to evade the obligation of testifying.").

As evidenced by the record and conceded by the Commonwealth during oral argument, the trial court here conducted no such inquiry into the genuineness of Weaver's memory loss. Nor did it find, either expressly or by implication, that Weaver was "unavailable."[20] Those omissions, taken together with the trial court's complete silence as to any aspect of Rule 2:804, demonstrate that the trial court never considered applying the "former testimony" exception as a basis for admitting Exhibit 8.[21] Further supporting that conclusion, the Commonwealth raised this rationale for the first time on appeal to retroactively justify the trial court's substantive use of Exhibit 8.[22] The fact that Exhibit 8 may have been properly admitted under the "former

---

[20] The Commonwealth claims that the trial court made a factual finding that Weaver's lack of memory was genuine. The record, however, does not reflect any such factual finding by the trial court. And no facts in the record support such a finding other than Weaver's own testimony, which is insufficient on its own to establish bona fide memory loss. *See Turner*, 284 Va. at 208 (holding that the trial court "may not rely on the bare assertion of a witness that he is unable to answer when examined at trial because he no longer remembers what occurred"). Ultimately, the trial court's failure to conduct its own inquiry as mandated by *Turner* renders a mere belief in the authenticity of Weaver's memory loss insufficient to satisfy the prerequisites for admitting former testimony under Rule 2:804(b)(1).

[21] Similar to Rule 2:804's sequential set of factual determinations is the process by which the trial court may allow a party to impeach its own witness if the witness proves "adverse." *See Maxey v. Commonwealth*, 26 Va. App. 514, 519-20 (1998) ("The term 'adverse,' under this section, refers to a witness whose testimony is 'injurious or damaging to the case of the party who called the witness.' . . . Code § 8.01-403 allows a party to impeach his or her own witness by prior inconsistent statements only when the witness . . . has suddenly given unexpected, adverse testimony on the stand." (quoting *Ragland*, 16 Va. App. at 920)). That the trial court here made those findings of adversity on the record, when granting the Commonwealth's request to impeach Weaver, demonstrates its ability to conduct a multi-step factual inquiry in the context of evidentiary decisions. Accordingly, the trial court's subsequent failure to undertake the factual analysis mandated by *Turner* before accepting Exhibit 8 as substantive evidence belies the Commonwealth's claim on appeal that the court intentionally relied upon and complied with the procedures of Rule 2:804.

[22] The Commonwealth argues, in the alternative, that even if "the prior testimony exception was not the rationale applied by the trial court," this Court should nevertheless affirm that judgment under the right-result-wrong-reason doctrine. This Court disagrees. A trial court's

testimony" exception, assuming the other requirements of Rule 2:804(b)(1) were also satisfied, does not excuse the trial court's failure to conduct the mandatory factfinding inquiry into Weaver's "unavailability."[23]

### B. Trial Court's Error Not Harmless

Under the mandates of Code § 19.2-324.1, an appellate court must remand a case for retrial "if it concludes that, absent the erroneously admitted evidence, the evidence as a whole was insufficient and that the error was not harmless." *Mason v. Commonwealth*, 64 Va. App. 599, 616 n.12 (2015). Although harmless error review is not a sufficiency-of-the-evidence analysis, *Commonwealth v. White*, 293 Va. 411, 422 (2017), "non-constitutional error may be harmless '[i]f other evidence of guilt is so overwhelming and the error [is] insignificant[] by comparison, supporting a conclusion that the error did not have a substantial effect on the verdict,'" *Turner*, 284 Va. at 209 (alterations in original) (quoting *Angel v. Commonwealth*, 281 Va. 248, 268 (2011)). Here, the trial court's erroneous use of Exhibit 8 served as the basis for the trial court's judgment of appellant's guilt, without which the remaining evidence was not so overwhelming as to render the trial court's error harmless.

In the absence of Weaver's preliminary hearing testimony—directly placing a gun in appellant's hands—the Commonwealth's evidence does not prove the necessary element of

---

judgment may be affirmed under the right-result-wrong-reason doctrine only when the trial court "has reached the correct result for the wrong reason, but the record supports the right reason." *Perry v. Commonwealth*, 280 Va. 572, 580 (2010). It does not apply when, as here, additional factfinding is necessary to support the alternate ground for affirmance. *Id.* at 579. Because the trial court left the record factually underdeveloped for appellate review on the question of Weaver's "unavailability," this Court may not rely upon the right-result-wrong-reason doctrine to affirm the trial court's judgment.

[23] *See Turner*, 284 Va. at 208 (holding that the trial court abused its discretion by admitting the preliminary hearing transcript of a witness deemed "unavailable" under Rule 2:804(b)(1) because the trial court "conducted no inquiry into [the witness]'s claim of memory loss").

actual or constructive possession beyond a reasonable doubt. The Commonwealth never recovered any firearms connected with the April 11, 2020 shooting and did not provide any forensic evidence establishing appellant's possession of a firearm on that date, such as the presence of gunshot residue on his hands or clothes. Nor did the Commonwealth introduce any other eyewitness testimony or video evidence to prove appellant was carrying a firearm. And the trial court found appellant guilty "based upon" Weaver's prior statements that he didn't see anyone else in the parking lot other than appellant and that he "saw a gun in [appellant]'s hand."

As a result, this Court cannot conclude that the improperly admitted evidence "did not have a substantial effect" on the trial court's judgment of guilt. *Turner*, 284 Va. at 209; *see also Doe*, 227 Va. at 473 ("[W]e cannot say as a matter of law that the inadmissible evidence did not affect the jury verdict." (alteration in original) (quoting *Nicholaou v. Harrington*, 217 Va. 618, 623 (1977))). Accordingly, this Court reverses appellant's conviction and remands the case for a new trial at the Commonwealth's election.

## II. Sufficiency of the Evidence

Appellant was convicted of violating Code § 18.2-308.2(A), which states in relevant part that "[i]t shall be unlawful for (i) any person who has been convicted of a felony . . . to knowingly and intentionally possess or transport any firearm." On appeal, he argues that the evidence was insufficient as to the element of possession, which "requires proof beyond a reasonable doubt of either actual or constructive possession of the firearm." *Hancock v. Commonwealth*, 21 Va. App. 466, 468 (1995). Appellant contends that Weaver's preliminary hearing testimony—even if properly considered for its truth—is insufficient to overcome the deficiencies in the Commonwealth's circumstantial evidence. This Court disagrees.

"[W]hen a challenge to a conviction rests on a claim that the evidence was insufficient because the trial court improperly admitted evidence, the reviewing court shall consider *all*

evidence admitted at trial to determine whether there is sufficient evidence to sustain the conviction." Code § 19.2-324.1 (emphasis added); *see also Lunsford v. Commonwealth*, 55 Va. App. 59, 62 (2009) ("When determining the sufficiency of the evidence, we consider all admitted evidence, including the evidence appellant here asserts was inadmissible."). The purpose of this requirement is "to ensure that any retrial of th[e challenged] charge would not violate double jeopardy principles." *McArthur v. Commonwealth*, 72 Va. App. 352, 366 (2020). If the evidence adduced at trial was insufficient to support the conviction, even when taking into account any improperly admitted evidence, "a remand for retrial would violate the Constitution's prohibition against double jeopardy." *Wilder v. Commonwealth*, 55 Va. App. 579, 594 (2010) (quoting *Parsons v. Commonwealth*, 32 Va. App. 576, 581 (2000)).

In reviewing the sufficiency of the evidence here, including Weaver's prior statements in Exhibit 8, this Court will not disturb the judgment of the trial court "unless it is plainly wrong or without evidence to support it." *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). So long as the record provides "evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Id.* (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)).

In the absence of clear error, this Court defers to the factfinder's resolution of conflicts in the testimony, weight given to the evidence, and reasonable inferences drawn "from basic facts to ultimate facts." *Robinson v. Commonwealth*, 70 Va. App. 509, 513 (2019) (en banc) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The trial court's decision to accept as true

Weaver's prior statements from the preliminary hearing was based on its finding that Weaver's trial testimony was credible, despite appellant's accusations that the physical evidence contradicted Weaver's statements.[24] As the trial court itself acknowledged, the facts it relied on to convict appellant came from the totality of Weaver's testimony at both trial and the preliminary hearing. This Court finds that evidence sufficient to support appellant's conviction for possessing a firearm by a convicted violent felon in violation of Code § 18.2-308.2(A).

According to Weaver's collective testimony, he was sitting in the front passenger seat of a black sedan next to Rone on April 11, 2020, at approximately 8:14 p.m. Although a few other cars were also parked nearby, no other people were in the parking lot except for appellant. Weaver saw appellant pointing a gun at him and Rone from outside the car in which they were sitting. Moments later, both Weaver and Rone were struck by bullets, the gunshot wounds to Rone proving fatal.

Those facts sufficiently establish that appellant, whom Weaver called by name and identified in court, had actual possession of a firearm on April 11, 2020. Given Weaver's testimony, the fact that no firearm was ever recovered by the police is immaterial because the offense of possessing a firearm was completed as soon as Weaver observed appellant holding a gun. Furthermore, the lack of any weapon found on scene does not necessarily contradict Weaver's testimony. Therefore, taken in the light most favorable to the Commonwealth, Weaver's testimony on its own was sufficient to convict appellant because Code § 18.2-308.2(A) requires the Commonwealth to prove possession of a firearm—not its use.

Nevertheless, as discussed above, appellant's conviction is reversed and the case is remanded because the trial court's impermissible use of Weaver's preliminary hearing testimony

---

[24] This Court finds no basis for disturbing the trial court's discretionary decision to credit Weaver's testimony. And appellant does not allege on appeal that this Court should find Weaver's testimony inherently incredible.

was not harmless error. *See* Code § 19.2-324.1 ("If the reviewing court determines that evidence was erroneously admitted and that such error was not harmless, the case shall be remanded for a new trial if the Commonwealth elects to have a new trial.").

CONCLUSION

The evidence presented at appellant's trial for unlawfully possessing a firearm as a convicted violent felon supports the trial court's finding of guilt, the lynchpin being Weaver's preliminary hearing testimony that he saw appellant holding a firearm. However, because the trial court did not examine whether Weaver's alleged memory loss at trial rendered him "unavailable" for purposes of Rule 2:804, the trial court erred in admitting and considering Weaver's prior testimony for the truth of the matter—that appellant in fact possessed a firearm. And that error was not harmless because the Commonwealth's circumstantial evidence is insufficient to support appellant's conviction in the absence of Weaver's incriminating preliminary hearing testimony. Accordingly, this Court reverses the judgment below, vacates appellant's conviction, and remands the case for a new trial should the Commonwealth be so inclined.

*Reversed and remanded.*